**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LAKE COUNTY, ILLINOIS,         ) | |
|                     ) | |
|           *Plaintiff,*    ) | |
|     v.                 ) | Case No. 1:23-cv-2402 |
|                     ) | |
| ELI LILLY AND COMPANY, et al.  ) | Honorable Lashonda Hunt |
|                     ) | |
|          *Defendants*.   ) | |

**MEMORANDUM OF LAW IN SUPPORT OF UNITEDHEALTH GROUP, INC.,
OPTUMRX, INC., OPTUM, INC., AND OPTUMINSIGHT, INC.'S
<u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

LEGAL STANDARD .................................................................................................... 3

ARGUMENT ................................................................................................................. 4

I.     THE INDIRECT-PURCHASER RULE BARS THE COUNTY'S RICO CLAIMS ......... 4

II.    THE COUNTY'S CONTRACT WITH OPTUMRX FORECLOSES ITS CLAIMS ....... 7

III.   THE COUNTY FAILS TO PLEAD THE ELEMENTS OF A RICO CLAIM ................ 9

      A.    The County has not alleged predicate "racketeering activity" of mail
            or wire fraud with Rule 9(b) particularity. ............................................... 9

      B.    The County has not alleged that the alleged RICO violation caused
            its alleged injury ..................................................................................... 13

      C.    The County fails to plead a RICO enterprise. ........................................ 14

      D.    The County fails to plead OptumRx conducted or participated in
            the affairs of a RICO enterprise. ........................................................... 15

      E.    The County's RICO conspiracy claim fails. .......................................... 17

IV.   THE COUNTY FAILS TO STATE A CLAIM UNDER THE ILLINOIS CONSUMER
      FRAUD ACT. ........................................................................................................ 17

      A.    The County fails to allege any actionable misrepresentation with
            the required particularity. ....................................................................... 17

      B.    The County fails to adequately allege any unfair practice or act. ......... 20

V.     THE COUNTY FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT ........... 21

VI.   THE COUNTY'S CIVIL CONSPIRACY CLAIM FAILS BECAUSE IT HAS NOT
      ALLEGED AN ACTIONABLE UNDERLYING TORT. ...................................... 22

VII.  THE COURT SHOULD DISMISS OPTUMRX'S CORPORATE PARENTS AND
      AFFILIATE ENTITIES. ....................................................................................... 22

VIII. THE COUNTY'S CLAIMS ARE TIME-BARRED. ............................................. 24

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006), *aff'd sub nom. by Ideal Steel Supply Corp v. Beil*, 55 A.D.3d
544 (N.Y. App. Div. 2d Dep't 2008) .......................................................................... 13

*Apple Inc. v. Pepper*,
139 S. Ct. 1514 (2019) .............................................................................................. 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................... 3, 7, 20, 24

*Assocs. in Adolescent Psychiatry, S.C. v. Home Life Ins. Co.*,
941 F.2d 561 (7th Cir. 1991) ..................................................................................... 12

*Avery v. State Farm Mut. Auto. Ins. Co.*,
216 Ill. 2d 100 (2005) ............................................................................................... 19

*Axe v. Norfolk S. Ry. Co.*,
2012 IL App (5th) 110277-U ...................................................................................... 25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................. 3, 13

*Biczo v. Ferrara Candy Co.*,
No. 22-cv-01967, 2023 U.S. Dist. LEXIS 46294 (N.D. Ill. Mar. 20, 2023) ........... 19

*Borsellino v. Goldman Sachs Grp., Inc.*,
477 F.3d 502 (7th Cir. 2007) ...................................................................................... 3

*Boyle v. United States*,
556 U.S. 938 (2009) ................................................................................................... 14

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) ........................................................................... 3, 18, 24

*Carter v. Berger*,
777 F.2d 1173 (7th Cir. 1985) ..................................................................................... 4

*Cnty. of Marin v. Deloitte Consulting LLP*,
836 F. Supp. 2d 1030 (N.D. Cal. 2011) ..................................................................... 12

*Cox v. Sherman Capital LLC*,
No. 1:12-cv-01654-TWP-MJD, 2014 U.S. Dist. LEXIS 43147 (S.D. Ind. Mar. 31,
2014) .......................................................................................................................... 15

*Damato v. Merrill Lynch, Pierce, Fenner & Smith*,
   No. 94 C 3143, 1996 U.S. Dist. LEXIS 4180 (N.D. Ill. Mar. 28, 1996) ..................................9

*Dolmage v. Combined Ins. Co. of Am.*,
   No. 14 C 3809, 2015 U.S. Dist. LEXIS 6824 (N.D. Ill. Jan. 21, 2015) .................................21

*Edgenet, Inc. v. GS1, AISBL*,
   742 F. Supp. 2d 997 (E.D. Wis. 2010)..................................................................................12

*Fleury v. GM LLC*,
   No. 22-cv-03862, 2023 U.S. Dist. LEXIS 16800 (N.D. Ill. Feb. 1, 2023) ............................20

*Forsyth v. Humana, Inc.*,
   114 F.3d 1467 (9th Cir. 1997), *overruled on other grounds by Lacey v. Maricopa
   Cnty.*, 693 F.3d 896 (9th Cir. 2012)................................................................................10, 11

*Goren v. New Vision Int'l*,
   156 F.3d 721 (7th Cir. 1998) ........................................................................................16, 17

*Green v. Morningstar Inv. Mgmt. LLC*,
   No. 17 C 5652, 2019 U.S. Dist. LEXIS 7576 (N.D. Ill. Jan. 16, 2019) ................................16

*Gress v. Commonwealth Edison Co.*,
   559 F. Supp. 3d 755 (N.D. Ill. 2021), *aff'd*, 46 F.4th 646 (7th Cir. 2022) ............................9

*Guinn v. Hoskins Chevrolet*,
   361 Ill. App. 3d 575 (2005) ................................................................................................21

*Harris Cnty. v. Eli Lilly & Co.*,
   No. H-19-4994, 2022 U.S. Dist. LEXIS 27715 (S.D. Tex. Feb. 16, 2022)............................21

*Holmes v. Sec. Inv. Prot. Corp.*,
   503 U.S. 258 (1992)............................................................................................................13

*In re Direct Purchaser Insulin Pricing Litig.*,
   No. 3:20-cv-3426 (D.N.J.) .....................................................................................................5

*In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*,
   2019 U.S. Dist. LEXIS 131574 (C.D. Cal. May 22, 2019) ....................................................12

*In re Innovatio IP Ventures, LLC Patent Litig.*,
   921 F. Supp. 2d 903 (N.D. Ill. 2013) .............................................................................11, 18

*In re Insulin Pricing Litig.*,
   No. 3:17-cv-699 (D.N.J. Feb. 2, 2017), ECF No. 1 ...............................................................25

*In re Insulin Pricing Litig.*,
  No. 3:17-cv-0699, 2019 U.S. Dist. LEXIS 25185
  (D.N.J. Feb. 15, 2019)......................................................................................6

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,
  MDL No. 2545, 2018 U.S. Dist. LEXIS 125041 (N.D. Ill. July 26, 2018), *aff'd*, 784
  F. App'x 457 (7th Cir. 2019) ........................................................................13

*Indeck N. Am. Power Fund, L.P. v. Norweb, P.L.C.*,
  316 Ill. App. 3d 416 (2000) ..........................................................................22

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.*,
  610 F.3d 382 (7th Cir. 2010) ....................................................................1, 25

*Jennings v. Auto Meter Prods.*,
  495 F.3d 466 (7th Cir. 2007) ...........................................................................8

*Joiner v. Ryder Sys. Inc.*,
  966 F. Supp. 1478 (C.D. Ill. 1996) ...............................................................23

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*,
  529 F.3d 371 (7th Cir. 2008) .........................................................................23

*Kim v. Carter's Inc.*,
  598 F.3d 362 (7th Cir. 2010) .........................................................................19

*Kremers v. Coca-Cola Co.*,
  712 F. Supp. 2d 759 (S.D. Ill. 2010)..............................................................18

*Landon v. GTE Commc'ns Servs. Inc.*,
  696 F. Supp. 1213 (N.D. Ill. 1988) ..................................................................9

*Law Offs. of David Freydin, P.C. v. Chamara*,
  24 F.4th 1122 (7th Cir. 2022) ........................................................................22

*Luna v. 4C Kinzie Inv., LLC*,
  No. 18 C 5165, 2020 U.S. Dist. LEXIS 91 (N.D. Ill. Jan. 2, 2020)..................9

*Mancari's Chrysler/Jeep, Inc. v. Universal Auto Leasing, Inc.*,
  No. 04 C 6631, 2005 U.S. Dist. LEXIS 20388 (N.D. Ill. Sept. 15, 2005)..............12

*Mann v. Thomas Place, L.P.*,
  2012 IL App (1st) 110625-U ..........................................................................24

*Marion Healthcare, LLC v. Becton Dickinson & Co.*,
  952 F.3d 832 (7th Cir. 2020) .......................................................................4, 6

*Markovic v. TRU Funding LLC*,
   No. 21-cv-06628, 2023 U.S. Dist. LEXIS 49398 (N.D. Ill. Mar. 23, 2023) ...............9, 13, 16

*Martin v. Wendy's Int'l, Inc.*,
   183 F. Supp. 3d 925 (N.D. Ill. 2016), *aff'd*, 714 F. App'x 590 (7th Cir. 2018) ....................19

*Martis v. Grinnell Mut. Reinsurance Co.*,
   388 Ill. App. 3d 1017 (2009) ...................................................................................22

*Mercatus Grp., LLC v. Lake Forest Hosp.*,
   641 F.3d 834 (7th Cir. 2011) ...........................................................................11, 18

*Mississippi ex. rel. Fitch v. Eli Lilly & Co.*,
   No. 21-cv-00674 (S.D. Miss. Aug. 15, 2022), ECF No. 112, slip op....................................23

*MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*,
   No. 3:18-cv-2211, 2019 U.S. Dist. LEXIS 54086 (D.N.J. Mar. 29, 2019) .............................6

*Napleton's Arlington Heights Motors, Inc. v. FCA US LLC*,
   214 F. Supp. 3d 675 (N.D. Ill. 2016) ...................................................................17

*Nesby v. Country Mut. Ins. Co.*,
   346 Ill. App. 3d 564 (2004) .........................................................................21

*New Eng. Carpenters Health & Welfare Fund v. Abbott Labs.*,
   No. 12 CV 1662, 2014 U.S. Dist. LEXIS 134857 (N.D. Ill. Sept. 25, 2014)..........................14

*Peddinghaus v. Peddinghaus*,
   295 Ill. App. 3d 943 (1998) .........................................................................21

*People ex rel. Hartigan v. E & E Hauling, Inc.*,
   153 Ill.2d 473 (1992) ..................................................................................18

*Phone Recovery Servs. of Ill., LLC, v. Ameritech Ill. Metro, Inc.*,
   No. 1-17-0968, 2018 IL App (1st) 170968-U ........................................................18

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
   631 F.3d 436 (7th Cir. 2011) .............................................................................3

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993)......................................................................................15

*Rotella v. Wood*,
   528 U.S. 549 (2000).........................................................................................25

*Sears v. Likens*,
   912 F.2d 889 (7th Cir. 1990) ...................................................................10, 18

*Sefton v. Toyota Motor Sales U.S.A., Inc.,*
    No. 09 C 3787, 2010 U.S. Dist. LEXIS 37036 (N.D. Ill. Apr. 14, 2010).............................17

*Sharif Pharm., Inc. v. Prime Therapeutics, LLC,*
    950 F.3d 911 (7th Cir. 2020) ...........................................................................................4, 5

*Shropshear v. Corp. Counsel of City of Chi.,*
    275 F.3d 593 (7th Cir. 2001) .................................................................................................25

*Siegel v. Shell Oil Co.,*
    612 F.3d 932 (7th Cir. 2010) .................................................................................................20

*Sklodowski v. Countrywide Home Loans, Inc.,*
    358 Ill. App. 3d 696 (2005) ....................................................................................................8

*Speakers of Sport, Inc. v. ProServ, Inc.,*
    178 F.3d 862 (7th Cir. 1999) .................................................................................................19

*Spector v. Mondelez Int'l, Inc.,*
    178 F. Supp. 3d 657 (N.D. Ill. 2016) ...............................................................................17, 18

*Strow v. B&G Foods, Inc.,*
    No. 21-cv-5104, 2022 U.S. Dist. LEXIS 179463 (N.D. Ill. Sept. 30, 2022) ...........................7

*THC Holdings Corp. v. Tishman,*
    No. 93 Civ. 5393 (KMW), 1996 U.S. Dist. LEXIS 7562 (S.D.N.Y. May 30, 1996).............14

*Thomas v. Fuerst,*
    345 Ill. App. 3d 929 (2004) ..................................................................................................22

*Tierney v. Vahle,*
    304 F.3d 734 (7th Cir. 2002) ..................................................................................................8

*Turow v. Glazier,*
    No. 21 C 5756, 2022 U.S. Dist. LEXIS 155988 (N.D. Ill. Aug. 30, 2022) .............................9

*United Food & Com. Worker Unions & Emps. Midwest Health Benefits Fund v.*
    *Walgreen Co.,*
    719 F.3d 849 (7th Cir. 2013) .................................................................................................16

*United States ex rel. Walner v. NorthShore Univ. Healthsystem,*
    660 F. Supp. 2d 891 (N.D. Ill. 2009) ....................................................................................10

*United States v. Bestfoods,*
    524 U.S. 51 (1998)................................................................................................................23

*United States v. Lewis,*
    411 F.3d 838 (7th Cir. 2005) .................................................................................................24

*United States v. Lockheed-Martin Corp.*,
  328 F.3d 374 (7th Cir. 2003) .................................................................4

*United States v. Turkette*,
  452 U.S. 576 (1981) ..........................................................................15

*Whitley v. Taylor Bean & Whitacker Mortg. Corp.*,
  607 F. Supp. 2d 885 (N.D. Ill. 2009) ......................................................25

**RULES**

Fed. R. Civ. P. 9(b) ........................................................3, 13, 15, 20, 25

Fed. R. Civ. P. 8 ....................................................................15, 20

Fed R. Civ. P. 12(b)(6).................................................................7, 9

**STATUTES**

215 ILCS 5/513b1(b)(5) ..................................................................20

805 ILCS 505/10a(e)......................................................................24

15 U.S.C. § 15b ...........................................................................24

18 U.S.C. § 1962 (RICO)............................................................ passim

Illinois Consumer Fraud Act......................................................... passim

Sherman Act..............................................................................5

## INTRODUCTION

Lake County, Illinois alleges that insulin manufacturers Eli Lilly, Novo Nordisk, and Sanofi (Manufacturer Defendants) conspired with each other and separately with three pharmacy benefit managers (PBMs), CVS Caremark, Express Scripts, and OptumRx,[1] to increase insulin prices in exchange for "secret" rebate payments from the Manufacturer Defendants to the PBMs. The County alleges that this so-called "Insulin Pricing Scheme" violates federal racketeering laws, the Illinois Consumer Fraud and Deceptive Business Practices Act, and Illinois common law. But if you strip away the County's conclusory allegations, it becomes clear that the so-called "scheme" is nothing more than a critique of longstanding, well-accepted industry practices. At its core, the County's complaint represents a criticism of America's pharmaceutical pricing system. But those criticisms are issues for policymakers. The County's allegations, even if accepted as true, do not amount to criminal racketeering or violations of Illinois tort law.

The complaint suffers from many pleading defects—each fatal to the County's claims. *First*, the County lacks standing to assert its RICO claim. *Second*, the terms of the County's contract with OptumRx (which is incorporated into the pleadings) defeat contradictory allegations that OptumRx deceived the County. *Third*, the County's RICO claim is predicated on alleged acts of mail and wire fraud, but the County does not plead fraud with the particularity that Rule 9(b) requires or otherwise plead facts establishing a RICO claim. *Fourth*, the County's failure to plead fraud with particularity also defeats its claim under the Illinois Consumer Fraud Act. *Fifth*, the

---

[1] We use "OptumRx" in this brief to refer to Defendant OptumRx, Inc. In its complaint, the County improperly uses "OptumRx" to refer collectively to four distinct corporate entities: UnitedHealth Group, Inc., OptumRx, Inc., Optum, Inc., and OptumInsight, Inc. *See* Compl. ¶ 201. And it then merges those four entities with eleven other defendants under the label "PBM Defendants," even though many of those defendants do not provide PBM services. *Id.* ¶ 215. Although that sort of group pleading is improper, the result of the County's group pleading is that any defects in the claims against OptumRx, Inc. (the only defendant among the named United and Optum entities that provides PBM services) also defeats claims against UnitedHealth Group, Inc., Optum, Inc., and OptumInsight, Inc.

County's unjust-enrichment claim fails because the County had an express contract with OptumRx. *Sixth*, the County's civil-conspiracy claim fails because the County fails to allege any underlying tort. *Seventh*, OptumRx's corporate parents and affiliates must be dismissed because the County has tried superficially to tag them with OptumRx's alleged conduct. *Finally*, the County's claims are time-barred.

## BACKGROUND

Eli Lilly, Novo Nordisk, and Sanofi are pharmaceutical companies that research, develop, manufacture, and sell prescription drugs, including insulin and other diabetes medications. *See* Compl. ¶¶ 46, 57, 68. They also set the list prices for their products. *E.g., id.* ¶¶ 13, 18(c).

CVS Caremark, Express Scripts, and OptumRx are PBMs that contract with health-plan sponsors and third-party payors to administer prescription drug benefits. Among other things, PBMs develop lists of drugs called "formularies" that their clients can adopt to determine whether and to what extent their health plans cover prescription medications. *Id.* ¶ 284. PBMs also negotiate with drug manufacturers for rebates, which the PBMs share with their clients (according to the terms of each client's contract) to lower net drug costs. *Id.* ¶¶ 284, 289, 292. The contracts between PBMs and their clients, like the County, define what payments from manufacturers to PBMs constitute "rebates" and what portion the PBM must disburse to its clients. *Id.* ¶ 20.

The County alleges that, to gain access to PBM formularies, the Manufacturer Defendants "artificially inflate their list prices and then pay a significant, but undisclosed, portion of the inflated price back to the PBMs." *Id.* ¶ 19. The County claims that the payments back to the PBMs are given various names ("rebates, discounts, credits, inflation/price protection fees, administrative fees, etc.") (*id.*) and that the PBMs profit by retaining a significant share of those payments without sharing them with their clients. *Id.* ¶ 25. The County alleges that it has "unknowingly" reimbursed

too much for the diabetes medications sold to its beneficiaries because the purported scheme has driven prices higher. *Id.* ¶ 481.

The County asserts five claims: (1) violations of 18 U.S.C. § 1962(c) (RICO); (2) violations of 18 U.S.C. § 1962(d) (conspiracy to violate RICO); (3) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act; (4) civil conspiracy; and (5) unjust enrichment. *Id.* ¶¶ 514–629. The County seeks injunctive relief, restitution, disgorgement, actual damages, punitive damages, attorneys' fees and costs, and all other available relief to address and abate the alleged harm caused by the alleged Insulin Pricing Scheme. *Id.* ¶ 33.

## **LEGAL STANDARD**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Because all the County's claims "sound[] in fraud," they are also subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011) ("[T]he dictates of Rule 9(b) apply to allegations of fraud, not claims of fraud."); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (claims under the Illinois Consumer Fraud Act are subject to Rule 9(b)). Rule 9(b) requires a pleading to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading 'ordinarily requires describing the who, what, when, where, and how of the fraud.'" *Camasta*, 761 F.3d at 737 (citation omitted). When pleading a fraudulent

misstatement under Rule 9(b), the plaintiff must "state why those claims or statements were false." *United States v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003).

## ARGUMENT

## I.    THE INDIRECT-PURCHASER RULE BARS THE COUNTY'S RICO CLAIMS.

The County's RICO claims—and claims for unjust enrichment based on the same conduct—are barred by the indirect-purchaser rule. In *Illinois Brick Co. v. Illinois*, the U.S. Supreme Court held that only direct purchasers may sue under federal antitrust laws. 431 U.S. 720, 745–46 (1977). The "bright-line rule of *Illinois Brick* . . . means that indirect purchasers who are two or more steps removed from the antitrust violator in a distribution chain may not sue." *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1521 (2019). The logic of the rule is to "ensure that 'the defendant should not be made to pay twice for the very same injury.'" *Sharif Pharm., Inc. v. Prime Therapeutics, LLC*, 950 F.3d 911, 915 (7th Cir. 2020) (citation omitted); *see also Marion Healthcare, LLC v. Becton Dickinson & Co.*, 952 F.3d 832, 836 (7th Cir. 2020) ("'Indirect purchasers' who paid too much for a product because cartel or monopoly overcharges were passed on to them by middlemen must take their lumps and hope that the market will eventually sort everything out."). The Seventh Circuit has held that *Illinois Brick*'s bar on indirect-purchaser suits also applies to RICO claims. *See, e.g.*, *Carter v. Berger*, 777 F.2d 1173, 1177 (7th Cir. 1985) (the indirect-purchaser rule "applies to RICO, too.").

The County alleges that the PBMs and Manufacturer Defendants hatched a "scheme" to increase the price of insulin and other diabetes medications. But the County fails to plausibly allege that it purchased insulin directly from any defendant. Accordingly, *Illinois Brick* bars the County's RICO claims (and unjust-enrichment claims based on the same alleged conduct).

In *Sharif Pharmacy*, the Seventh Circuit held that the indirect-purchaser rule barred a pharmacy's customers' antitrust claims against a PBM that allegedly removed the customers'

preferred pharmacy from its network. 950 F.3d at 915. The Court concluded that the pharmacy—not its customers—was more directly affected by the alleged antitrust violation. *Id.* ("Because [the] [p]harmacy would have been most directly affected by any alleged anti-trust violation, its own customers may not bring their own claims for damages under the Sherman Act."). The Court held that *Illinois Brick* barred independent antitrust claims by the customer plaintiffs because "the relief [they] sought . . . would duplicate any relief that [the pharmacy] could have sought on its own behalf" and would "'substantially increase[] the possibility of inconsistent adjudications'" and "'unwarranted multiple liability for the defendant.'" *Id.* (quoting *Ill. Brick*, 431 U.S. at 730).

The same is true here. The County alleges that it was overcharged for insulin but does not plausibly allege that it purchased insulin directly from any defendant. *See* Compl. ¶ 278. The County alleges that insulin medications are generally distributed in one of three ways: "(1) from manufacturer to wholesaler (distributor), wholesaler to pharmacy, and pharmacy to patient, or (2) from manufacturer to mail-order pharmacy to patient; and (3) from manufacturer to mail-order pharmacy, mail-order pharmacy to self-insured payor, and then self-insured payor to patient." *Id.* ¶ 278. The County (a self-insured payor) is not listed in two of those alleged distribution chains, and in the third, there is a more direct purchaser upstream.

That presents the same double recovery problem identified in *Sharif Pharmacy*. Each defendant in this lawsuit is already a defendant in another "direct purchaser" lawsuit by wholesalers who—according to the County's allegations (*see* Compl. ¶ 278)—purchased insulin directly from insulin manufacturers. *See In re Direct Purchaser Insulin Pricing Litig.*, No. 3:20-cv-3426 (D.N.J.). Allowing this case to proceed in parallel would "duplicate any relief" the wholesalers are already seeking and result in "unwarranted multiple liability for the defendant[s]." *Sharif Pharmacy*, 950 F.3d at 915.

5

The County cannot avoid the indirect-purchaser rule by alleging that it "directly contracts with, and directly pays, PBMs (and their affiliated pharmacies) for pharmaceutical benefits and prescription drugs, including the at-issue medications." Compl. ¶ 409. That conclusory allegation appears designed to circumvent the indirect-purchaser bar, but there is no dispute that the County does not "purchase" insulin from the PBMs. According to the County's allegations, patients purchase insulin from the pharmacy, the pharmacy purchases insulin from wholesalers, and wholesalers purchase insulin from manufacturers. Third-party payors, like the County, sometimes pay PBMs to (as the County alleges) "reimburse pharmacies for the drugs utilized by the payor's beneficiaries." *Id.* ¶ 284. But those alleged reimbursements do not confer direct-purchaser status on the County such that it can avoid the indirect-purchaser rule. *See MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, No. 3:18-cv-2211, 2019 U.S. Dist. LEXIS 54086, at *40 (D.N.J. Mar. 29, 2019) (dismissing RICO claims by payor plaintiffs because they were "not the first party to pay for the analog insulin at a purportedly inflated price"); *In re Insulin Pricing Litig.*, No. 3:17-cv-0699, 2019 U.S. Dist. LEXIS 25185, at *42 (D.N.J. Feb. 15, 2019) (dismissing RICO claims because plaintiffs "failed to allege that they directly purchased the analog insulin from Defendants").

Any attempt by the County to rely on the so-called "co-conspirator exception" to the indirect-purchaser rule necessarily fails. As the Seventh Circuit has explained, "it is better to think of the right to sue co-conspirators not as an exception to *Illinois Brick*, but instead as a rule inhering in *Illinois Brick* that allocates the right to collect 100% of the damages to the first non-conspirator in the supply chain." *Marion Healthcare*, 952 F.3d at 839. Because wholesalers and pharmacies are not alleged to be conspirators in the alleged "Insulin Pricing Scheme" and precede the County in the alleged supply chain, the County cannot avail itself of the co-conspirator exception. *Id.*

As explained above, a putative class of wholesalers is already pressing a virtually identical case based on virtually the same allegations.

## II. THE COUNTY'S CONTRACT WITH OPTUMRX FORECLOSES ITS CLAIMS.

The County's complaint is rooted in allegations that the defendants engaged in an "unfair and deceptive conspiracy." Compl. ¶ 12. The County repeatedly criticizes the PBMs' negotiations with manufacturers as a "hide-the-ball system" involving "undisclosed" payments that are "shrouded in secrecy." *Id.* ¶¶ 368, 369, 371. It alleges that PBMs profit by "(1) retaining a significant, yet undisclosed, percentage of the Manufacturers Payments, (2) using the inflated list price to generate profits from pharmacies, and (3) relying on the inflated list price to drive up the PBMs' margins through their own mail-order pharmacies." *Id.* ¶ 363. But those allegations, at least as to OptumRx, are foreclosed by the County's contract for PBM services.

The terms of the County's contract with OptumRx—terms that the County negotiated and which are incorporated by reference in its complaint[2]—show that the County was not deceived by OptumRx. *Iqbal*, 556 U.S. at 678 (factual allegations must state a claim "that is plausible on its face"). Under the County's 2018 Prescription Drug Benefit Administration Agreement, ██████████ ████████████████████████████████ Liou Decl., Ex. A p. 15. The County alleges that "'rebates' are only one aspect of the total secret Manufacturer Payments, particularly as 'rebates' are narrowly defined and qualified by vague exceptions in the PBM Defendants' contracts with payors." Compl. ¶ 367. But that allegation confirms that the contract—which the County negotiated—defines what constitutes a rebate. Under the County–OptumRx contract, ████████ ███████████████████████████████████████████████████████████████████

---

[2] In deciding a Rule 12(b)(6) motion, the Court may consider documents incorporated by reference or integral to a complaint. *Strow v. B&G Foods, Inc.*, No. 21-cv-5104, 2022 U.S. Dist. LEXIS 179463, at *19 n.1 (N.D. Ill. Sept. 30, 2022). At various points in the complaint, the County alleges that it contracted with OptumRx for PBM services. *See, e.g.*, Compl. ¶ 196.

███████████████████████████████████████████████████████████████

███████████████████████████████████ Liou Decl., Ex. A pp. 9, 15. But the contract also

spells out that OptumRx █████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████████████ *Id.* In the face of that contractual

language, the County cannot complain that it did not know that OptumRx was retaining certain

fees; it specifically agreed in the contract that OptumRx could do so.[3]

If the County contends that OptumRx did not comply with the terms of its contract, it

should try to plead a contract claim, not a RICO claim. The Seventh Circuit rejects RICO claims,

like the County's, which represent an "attempt[] to turn routine commercial disputes into civil

RICO actions." *Jennings v. Auto Meter Prods.*, 495 F.3d 466, 472 (7th Cir. 2007). Likewise, the

Illinois Consumer Fraud Act is not a proper vehicle to litigate contract disputes. *Sklodowski v.

Countrywide Home Loans, Inc.*, 358 Ill. App. 3d 696, 704 (2005) ("Here, what plaintiff calls

'consumer fraud' or an 'unfair deceptive act' is simply an allegation that Countrywide failed to

fulfill its contractual obligations. . . . This is merely a breach of contract count clothed as a violation

of the Consumer Fraud Act.").

The County's contract confirms that it was not deceived by the allegedly "undisclosed"

manufacturer payments described in the complaint. The County's apparent dissatisfaction with the

contract it negotiated does not constitute fraud or deception. *Tierney v. Vahle*, 304 F.3d 734, 738

---

[3] The contract also ████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████ Liou Decl., Ex. A pp. 3, 6,
10. Those provisions further undermine the County's allegations of deception or fraud.

(7th Cir. 2002) (a plaintiff cannot "evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved that his claim had no merit.").

## III. THE COUNTY FAILS TO PLEAD THE ELEMENTS OF A RICO CLAIM.

The Seventh Circuit "has cautioned the lower courts not to allow RICO plaintiffs to turn 'garden variety' fraud claims into federal RICO actions." *Luna v. 4C Kinzie Inv., LLC*, No. 18 C 5165, 2020 U.S. Dist. LEXIS 91, at *8 (N.D. Ill. Jan. 2, 2020). That is precisely what the County attempts to do here. A RICO plaintiff "must sufficiently plead" (1) "conduct," (2) "of an enterprise," (3) "through a pattern" (4) "of racketeering activity." *Turow v. Glazier*, No. 21 C 5756, 2022 U.S. Dist. LEXIS 155988, at *27 (N.D. Ill. Aug. 30, 2022). Further, "plaintiffs must plausibly allege that a RICO violation not only was a 'but for' cause of his injury, but was the proximate cause as well." *Gress v. Commonwealth Edison Co.*, 559 F. Supp. 3d 755, 765 (N.D. Ill. 2021) (internal quotation marks omitted), *aff'd*, 46 F.4th 646 (7th Cir. 2022). The County has not pleaded facts supporting even one of these requirements, never mind all of them.

### A. The County has not alleged predicate "racketeering activity" of mail or wire fraud with Rule 9(b) particularity.

The County predicates its RICO claims on mail and wire fraud but fails to plead particularized facts of fraud. Rule 9(b) requires the County to "plead with particularity the circumstances constituting fraud" and to allege the "who, what, when, where, and how" of the alleged conduct. *Markovic v. TRU Funding LLC*, No. 21-cv-06628, 2023 U.S. Dist. LEXIS 49398, at *7 (N.D. Ill. Mar. 23, 2023). That means the County "must sketch out *who* caused *what* to be mailed *when,* and *how* that mailing furthered the fraudulent scheme." *Damato v. Merrill Lynch, Pierce, Fenner & Smith*, No. 94 C 3143, 1996 U.S. Dist. LEXIS 4180, at *17 (N.D. Ill. Mar. 28, 1996) (quoting *Landon v. GTE Commc'ns Servs. Inc.,* 696 F. Supp. 1213, 1218 (N.D. Ill. 1988)),

*aff'd sub nom. by Damato v. Hermanson*, 153 F.3d 464 (7th Cir. 1998). The County doesn't come close to clearing that hurdle.

The County identifies four alleged categories of misrepresentations: "that (1) [the PBM Defendants'] interests are aligned with their payor clients; (2) they work to lower the price of the at-issue drugs and, in doing so, achieve substantial savings for diabetics and payors; . . . (3) that monies they receive from manufacturers and their formulary choices are for the benefit of payors and diabetics;" and (4) that PBM Defendants are "transparent about the Manufacturer Payments and that the amounts remit (or not) to payors." Compl. ¶¶ 441, 43.

As an initial matter, the Court must ignore alleged misrepresentations attributed to the "PBMs" or "Defendants" collectively because those allegations represent improper group pleading. *See United States ex rel. Walner v. NorthShore Univ. Healthsystem,* 660 F. Supp. 2d 891, 897 (N.D. Ill. 2009); *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (affirming dismissal because complaint was "bereft of any detail concerning who was involved in each allegedly fraudulent activity" and instead "lump[ed] all the defendants together"). Moreover, most of those statements are vague, nonspecific statements about PBMs' general business objectives that courts routinely cast aside. *Compare Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1481 (9th Cir. 1997) (statements that defendant could "control costs" and save money were "too general" to support fraud claim), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012).

The County offers only a handful of alleged representations (each quoted below) attributed to OptumRx, but none is sufficient to state a claim for fraud:

- "Defendant OptumRx has consistently stated in its annual reports over the past decade that OptumRx's rebate contracting and formulary management assist customers in achieving a low-cost, high-quality pharmacy benefit. It has consistently claimed that it promotes lower costs by using formulary programs to produce better unit costs, encouraging patients to use drugs that offer improved value and that OptumRx's formularies are selected for health plans based on their safety, cost and effectiveness." Compl. ¶ 433.

10

- "Dr. Sumit Dutta, SVP and Chief Medical Officer of OptumRx, testified before the U.S. Congress in the April 2019 hearing that for 'insulin products . . . we negotiate with brand manufacturers to obtain significant discounts off list prices on behalf of our customers.'" *Id.* at ¶ 434.

- "OptumRx CEO John Prince testified to the Senate: 'We *reduce the costs of prescription drugs* [and] we are leading the way to ensure that *those discounts directly benefit consumers*. . . . OptumRx's pharmacy care services business is *achieving better health outcomes for patients, lowering costs* for the system, and *improving the healthcare experience for consumers*. . . . OptumRx negotiates better prices with drug manufacturers *for our customers and for consumers*.'" *Id.* at ¶ 435 (emphases in complaint).

- "During the April 2019 Congressional hearings, when asked if PBM-negotiated rebates and discounts were causing the insulin price to increase, OptumRx's Chief Medical Officer Sumit Dutta answered, 'we can't see a correlation when rebates raise list prices.'" *Id.* at ¶ 436.

- "In 2011 . . . OptumRx's President stated: 'We want our clients to fully understand our pricing structure . . . [e]very day we strive to show our commitment to our clients, and one element of that commitment is to be open and honest about our pricing structure.'" *Id.* at ¶ 445.

- "John Prince of OptumRx chimed in, 'Senator, if our discounts were publicly available, it would hurt our ability to negotiate effectively. Our discounts are transparent to our clients.'" *Id.* at ¶ 449.

As a threshold matter, four of those six alleged misrepresentations are pulled from congressional testimony and, therefore, constitute protected petitioning under the *Noerr-Pennington* doctrine and cannot support a RICO claim. *See Mercatus Grp., LLC v. Lake Forest Hosp.,* 641 F.3d 834, 849 (7th Cir. 2011) (holding that *Noerr-Pennington* applies to statements made by defendants in legislative proceedings); *In re Innovatio IP Ventures, LLC Patent Litig.,* 921 F. Supp. 2d 903, 911 (N.D. Ill. 2013) ("[T]he Seventh Circuit has applied the doctrine broadly, including to RICO claims.").

In any event, each alleged misrepresentation describes OptumRx's broad business objectives in a manner that is far too general to support a fraud claim. *See Forsyth*, 114 F.3d at 1481. Mail and wire fraud require "quantifiable, actionable misstatements," not "highly subjective,

generalized statements of . . . superiority.'" *Cnty. of Marin v. Deloitte Consulting LLP,* 836 F. Supp. 2d 1030, 1039 (N.D. Cal. 2011); *see also Assocs. in Adolescent Psychiatry, S.C. v. Home Life Ins. Co.*, 941 F.2d 561, 570 (7th Cir. 1991) ("Statements that a certain investment will earn the 'highest' rate of return are puffery."). Statements that OptumRx provides "high-quality pharmacy benefit[s]" (Compl. ¶ 433), "benefit[s] consumers" (*id.* ¶ 435), negotiates "significant discounts" (*id.* ¶ 434), or "strive[s]" to be "honest" (*id.* ¶ 445) are not enough. *Mancari's Chrysler/Jeep, Inc. v. Universal Auto Leasing, Inc.*, No. 04 C 6631, 2005 U.S. Dist. LEXIS 20388, at *4–5 (N.D. Ill. Sept. 15, 2005) ("the allegations of wrongdoing in the [] complaint [we]re too general" to satisfy Rule 9(b)); *Edgenet, Inc. v. GS1, AISBL,* 742 F. Supp. 2d 997, 1018 (E.D. Wis. 2010) ("Statements regarding the ability of a business to meet clients' needs are completely subjective" and cannot support a RICO fraud claim).

The County's fraud allegations also fail to show that the identified misstatements are false. Because the alleged statements concern OptumRx's overall business (and are not specific to insulin), the County must allege particularized facts demonstrating that the statements are false as to OptumRx's overall business. *See, e.g., In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.,* 2019 U.S. Dist. LEXIS 131574, at *19 (C.D. Cal. May 22, 2019) ("Given that these representations pertain to the vehicles' overall performance, the Complaints should at least allege facts establishing how these vehicles performed overall rather than just how they performed . . . for what might just as plausibly be isolated issues."). Although the County complains about insulin prices, it never alleges facts disproving OptumRx's representation that it tries (as a general matter) to provide a "high-quality pharmacy benefit." Compl. ¶ 433. Notwithstanding that the County's factual allegations about insulin pricing are unfounded, allegations about a purported

insulin-pricing scheme say nothing about the veracity of alleged statements that OptumRx's efforts *as a whole* reduce healthcare spending.

### B. The County has not alleged that the alleged RICO violation caused its alleged injury.

A RICO plaintiff must allege and prove that it was injured "by reason of" the alleged violation. 18 U.S.C. § 1964(c). That requires the plaintiff to demonstrate that the predicate act "not only was a 'but for' cause of his [claimed financial] injury, but was the proximate cause as well." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). To do so, the County must allege facts establishing the alleged violation "led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006), *aff'd sub nom. by Ideal Steel Supply Corp v. Beil*, 55 A.D.3d 544 (N.Y. App. Div. 2d Dep't 2008). It is not enough to allege that "injury arose generally from the enterprise." *Markovic*, 2023 U.S. Dist. LEXIS 49398, at *16. The County must instead allege that it suffered concrete financial injury by an act that is "independently wrongful under RICO." *Id.*

The County has not alleged facts suggesting that, absent the alleged misrepresentations, it would have paid less for insulin or otherwise that the alleged misrepresentations proximately caused its claimed financial injuries. To state a RICO claim based on mail or wire fraud, a plaintiff must allege that "that *someone* relied on the defendant's misrepresentation." *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL No. 2545, 2018 U.S. Dist. LEXIS 125041, at *318 (N.D. Ill. July 26, 2018) (emphasis in original) (quotation omitted), *aff'd*, 784 F. App'x 457 (7th Cir. 2019). The County attempts to satisfy that causation requirement through a conclusory allegation that it "relied on Defendants' statements and material omissions . . . [.]" Compl. ¶ 474. That conclusory allegation is particularly implausible given that the County does not allege a single representation directed toward the County. But regardless, to comply with *Twombly* and its progeny—not to mention Rule 9(b)'s heightened requirements—the County cannot just say that it

relied; it must allege facts explaining what it (or someone else) did or didn't do because of the alleged misrepresentation. *THC Holdings Corp. v. Tishman*, No. 93 Civ. 5393, 1996 U.S. Dist. LEXIS 7562, at *11 (S.D.N.Y. May 30, 1996) ("[A] plaintiff seeking to base RICO liability on [mail or wire fraud] must *prove* that its injuries are the result of reliance on the fraud.").

Instead of alleging facts establishing reliance, the County goes the opposite direction. The County alleges that "Plaintiff's employees responsible for managing Plaintiff's health plans were . . . *not* exposed to all of the misrepresentations detailed [in the complaint]." Compl. ¶ 438 (emphasis added). Despite allegedly contracting with OptumRx from 2018 to 2022, the County cannot identify a single misrepresentation made by an OptumRx representative relating to those contracts. There is no need to belabor the point: The County fails to allege that anyone relied on any misrepresentation.

## C. The County fails to plead a RICO enterprise.

The County also fails to plausibly allege that OptumRx joined a separate criminal enterprise with *any* Manufacturer Defendant, much less all of them. 18 U.S.C. § 1962(c). According to the complaint, there are six association-in-fact enterprises—three of which include OptumRx and one of the Manufacturer Defendants. Compl. ¶ 519. "An association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States,* 556 U.S. 938, 946 (2009); *see also New Eng. Carpenters Health & Welfare Fund v. Abbott Labs.*, No. 12 CV 1662, 2014 U.S. Dist. LEXIS 134857, at *16 (N.D. Ill. Sept. 25, 2014) (explaining that, to allege a RICO enterprise, plaintiff must show that the defendants "joined together to create a distinct entity for a specific purpose" and rejecting Plaintiff's RICO enterprise allegations because Plaintiff failed to show Defendants

14

acted in a "fraudulent manner in order to further *the distinct goals of an enterprise*, separate and apart from the [Defendants'] business[es]") (internal quotation marks omitted) (emphasis added).

The County fails to allege specific facts to establish separate criminal enterprises between OptumRx and each of the insulin manufacturers. The County uses "OptumRx" to refer collectively to four distinct corporate entities (Compl. ¶ 201), and it refers to those four entities plus eleven other defendants collectively as "PBM Defendants." *Id.* ¶ 215. The County's decision to improperly "lump[] together" OptumRx and other Defendants as non-distinct participants in the so-called enterprises is fatal under Rules 8 and 9(b). *Cox v. Sherman Capital LLC*, No. 1:12-cv-01654, 2014 U.S. Dist. LEXIS 43147, at *14 (S.D. Ind. Mar. 31, 2014) (explaining that the "Seventh Circuit has previously rejected . . . complaints where multiple defendants are lumped together.") (internal quotation marks omitted)).

The County also fails to allege facts demonstrating that any "enterprise" involving OptumRx functioned as a unit that was "separate and apart" from the alleged "pattern of racketeering activity." *See United States v. Turkette,* 452 U.S. 576, 583 (1981) (holding that the "enterprise" cannot be the same as the "pattern of racketeering activity"; rather "it is an entity separate and apart from the pattern of activity in which it engages"). The only alleged connections that the County draws between the insulin manufacturers and OptumRx are the underlying rebate negotiations that are central to the so-called "Insulin Pricing Scheme." But where the "enterprise" *is* the scheme itself, the separate-existence requirement is not satisfied. *Id*.

D.   **The County fails to plead OptumRx conducted or participated in the affairs of a RICO enterprise.**

The County also fails to allege that OptumRx "conduct[ed]" or "participat[ed]" in an "enterprises' affairs," not just its own affairs. *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993) (quoting 18 U.S.C. § 1962(c)). The alleged predicate acts all concern OptumRx's management of

its own affairs. But to incur RICO liability, an "individual must have participated in the operation and management of the enterprise itself." *Goren v. New Vision Int'l*, 156 F.3d 721, 728 (7th Cir. 1998). "[S]imply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough." *Id.* at 728. Here, there are no plausible allegations that OptumRx participated in the affairs of a separate criminal enterprise involving any Manufacturer Defendant—much less all three. *See Markovic*, 2023 U.S. Dist. LEXIS 49398, at *9 ("Plaintiffs' complaint does not plausibly allege that Defendants acted in concert on behalf of a RICO enterprise; at most it alleges that Defendants pursued their own interests in various business transactions.").

The County alleges that "each Manufacturer–PBM enterprise could not have achieved its common purpose" without the actions of each Defendant. Compl. ¶ 545. But that is not enough to plead participation in a distinct enterprise when the defendants routinely engage in commercial transactions as a part of the prescription drug chain. *See United Food & Com. Worker Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 856 (7th Cir. 2013) (insufficient to allege "that the two companies must therefore 'cooperate' in order for drugs to reach consumers, such cooperation describes virtually every prescription pharmaceutical distribution chain."). OptumRx's alleged rebate practices show only a commercial relationship with each Manufacturer—not participation in a distinct RICO enterprise. *Green v. Morningstar Inv. Mgmt. LLC*, No. 17 C 5652, 2019 U.S. Dist. LEXIS 7576, at *11 (N.D. Ill. Jan. 16, 2019) ("[R]egular corporate . . . transactions show only that 'the defendants had a commercial relationship, not that they had joined together to create a distinct entity'" (citation omitted)); *United Food*, 719 F.3d at 856 ("The allegations in the complaint do not indicate how the cooperation in

16

this case exceeded that inherent in every commercial transaction between a drug manufacturer and pharmacy.").

### E. The County's RICO conspiracy claim fails.

Absent a viable underlying claim, the County's conspiracy claim under § 1962(d) also fails. *Napleton's Arlington Heights Motors, Inc. v. FCA US LLC*, 214 F. Supp. 3d 675, 692 (N.D. Ill. 2016) (dismissing RICO conspiracy claim because "[Plaintiffs'] RICO conspiracy claim is based on the same facts" as its substantive RICO claim). And apart from that, there is no plausible factual allegation that OptumRx agreed with any other defendant to "participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *Goren*, 156 F.3d at 732. That is, the County has not pled that OptumRx agreed with any other defendant to "the objective of a violation of RICO." *Id.*

## IV. THE COUNTY FAILS TO STATE A CLAIM UNDER THE ILLINOIS CONSUMER FRAUD ACT.

The County also fails to state an Illinois Consumer Fraud Act claim under either the deceptive practices or unfair conduct prongs of the statute. It can neither identify an actionable misrepresentation with the requisite particularity nor sufficiently allege that OptumRx's conduct was "unfair." The claim should be dismissed.

### A. The County fails to allege any actionable misrepresentation with the required particularity.

There is a two-fold heightened pleading standard for the County's Consumer Fraud Act claim. First, the County's allegations regarding misrepresentations in violation of the Consumer Fraud Act must satisfy Federal Rule of Procedure 9(b). *Sefton v. Toyota Motor Sales U.S.A., Inc.*, No. 09 C 3787, 2010 U.S. Dist. LEXIS 37036, at *13 (N.D. Ill. Apr. 14, 2010). Second, in ruling on a motion to dismiss, federal courts should also consider "the manner in which Illinois courts have interpreted the pleading requirements for a claim under the [Consumer Fraud Act]." *Spector*

17

*v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 672 (N.D. Ill. 2016). To satisfy the Illinois pleading requirements, a plaintiff must allege facts showing "not just the mere possibility of fraud, but that fraud is a '*necessary or probable inference*' from the facts alleged." *Spector*, 178 F. Supp. 3d at 672 (citing *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill.2d 473, 490 (1992)).

To state a claim under the Consumer Fraud Act, a plaintiff must allege "(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Camasta*, 761 F.3d at 739 (7th Cir. 2014) (quotation omitted). The County's allegations of misrepresentations cannot support a Consumer Fraud Act claim for many of the same reasons they cannot support a RICO claim. Again, the Court should set aside the County's allegations of unidentified misrepresentations attributed to the "PBMs" or "Defendants" collectively as improper group pleading. *See Phone Recovery Servs. of Ill., LLC, v. Ameritech Ill. Metro, Inc.*, No. 1-17-0968, 2018 IL App (1st) 170968-U, ¶ 37; *see also Sears*, 912 F.2d at 893. And again, any alleged misrepresentation pulled from congressional testimony is non-actionable under the *Noerr-Pennington* doctrine. *See Mercatus Grp., LLC,* 641 F.3d at 849; *see also In re Innovatio IP Ventures, LLC Pat. Litig.*, 921 F. Supp. 2d 903, 911 (N.D. Ill. 2013) ("In the Seventh Circuit, 'Noerr–Pennington has been extended beyond the antitrust laws, where it originated, and is today understood as an application of the first amendment's speech and petitioning clauses.'").

For the same reasons that the alleged misrepresentations fail the RICO causation requirement, they fail the Consumer Fraud Act's causation requirement. *Camasta*, 761 F.3d at 739 ("[A]n action brought under the ICFA requires the plaintiff to show he suffered 'actual damage' *as a result of* the defendant's violation of the act.") (emphasis added); *Kremers v. Coca-Cola Co.*, 712

F. Supp. 2d 759, 768 (S.D. Ill. 2010) ("To prove the element of proximate causation in a private cause of action brought under the ICFA, a plaintiff must allege that he was, in some manner, deceived." (quotation omitted)). The County fails to identify whom at the County heard, saw, or relied on OptumRx's alleged statements. On the contrary, the County alleges that "Plaintiff's employees responsible for managing Plaintiff's health plans were . . . not exposed to all of the misrepresentations detailed [in the complaint]." Compl. ¶ 438. The County has not alleged causation for purposes of the Consumer Fraud Act. *See Kim v. Carter's Inc*., 598 F.3d 362, 366 (7th Cir. 2010) (claims dismissed because the "alleged ICFA violation did not cause the plaintiffs actual damage").

And again, the statements the County identifies are not statements that it could have relied on. *See Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 934 (N.D. Ill. 2016) ("Statements that either refer to a product in such blustery, exaggerated terms that no consumer would rely on them as truthful, such as 'lowest' prices or 'best' quality, or that make a general claim of superiority so vague as to be incapable of being proved or disproved" constitute puffery), *aff'd*, 714 F. App'x 590 (7th Cir. 2018). Statements that an entity strives to lower costs are the type of aspirational statements that are not actionable under the Consumer Fraud Act. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 173 (2005) ("'Puffing' denotes the exaggerations reasonably to be expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined."); *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999) (statements that are "aspirational rather than enforceable" constitute puffery); *Biczo v. Ferrara Candy Co.*, No. 22-cv-01967, 2023 U.S. Dist. LEXIS 46294, at *7 (N.D. Ill. Mar. 20, 2023) ("Under Illinois law, mere puffery or a statement of seller's opinion is not actionable under either a common law fraud or ICFA claim.").

### B.      The County fails to adequately allege any unfair practice or act.

The County also fails to state a claim for unfair practices under the Consumer Fraud Act. The County alleges that OptumRx engaged in unfair acts and practices by "egregiously driving up the price of the at-issue drugs." Compl. ¶ 590. In evaluating whether that sort of allegation rises to the level of an unfair act or practice, "courts consider: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Fleury v. GM LLC*, No. 22-cv-03862, 2023 U.S. Dist. LEXIS 16800, at *13 (N.D. Ill. Feb. 1, 2023). A substantial injury is one that is not "outweighed by any countervailing benefits to consumers or competition that the practice produces" and "that consumers themselves could not reasonably have avoided." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010).

The County makes only vague and conclusory allegations that OptumRx's conduct is unfair under the Consumer Fraud Act "because it caused substantial injury," "cannot be reasonably avoided," "there are no countervailing benefits to consumers," and "it violates Illinois public policy." Compl. ¶¶ 590–91. Those are precisely the kinds of formulaic recitations of the elements that fail Rule 8's pleading requirements. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."). Those allegations fall well short of Rule 9(b)'s heightened pleading standard that governs Consumer Fraud Act claims.

Nor can the County plausibly allege the challenged conduct offends public policy. The Illinois legislature has recognized that PBM-negotiated rebates and other discounts from manufacturers are a standard industry practice. *See* 215 ILCS 5/513b1(b)(5). And federal law *requires* rebates for certain drugs prescribed to Medicaid enrollees. *See* 42 C.F.R. § 447.509.

Although the State may be frustrated by increasing insulin prices, its attempt to recast longstanding rebate practices as "unfair" or "deceptive" fails as a matter of law.

## V. THE COUNTY FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT.

"Where there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Nesby v. Country Mut. Ins. Co.,* 346 Ill. App. 3d 564, 567 (2004). Here, the County concedes that its relationship with OptumRx was governed by contract. *See* Compl. ¶ 468 ("From 2018 to July 2022, Plaintiff had a PBM service agreement in place with OptumRx."). Given that admission, the County's unjust enrichment claims against OptumRx must be dismissed. *See Harris Cnty. v. Eli Lilly & Co.*, No. H-19-4994, 2022 U.S. Dist. LEXIS 27715, at *41–42 (S.D. Tex. Feb. 16, 2022) (dismissing nearly identical unjust enrichment claims brought by Harris County, Texas).

It makes no difference that the County purports to bring its unjust-enrichment claim "in the alternative to" its other "claims for legal relief." Compl. ¶ 615. Although it is sometimes true that "unjust enrichment may be predicated on either quasi-contract or tort," *Peddinghaus v. Peddinghaus*, 295 Ill. App. 3d 943, 949 (1998), that principle does not apply because the County's unjust-enrichment claim relies on its contract with OptumRx and incorporates by reference allegations about the existence of that contract. *See Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604 (2005) (dismissing unjust enrichment claim that sounded in tort where plaintiff relied on the contract and incorporated those allegations in her unjust enrichment claim).

Even if the County could rely on an "alternative" pleading, "when an underlying claim of unlawful conduct is deficient, a claim for unjust enrichment based upon that same conduct should also be dismissed." *Dolmage v. Combined Ins. Co. of Am.*, No. 14 C 3809, 2015 U.S. Dist. LEXIS 6824, at *27 (N.D. Ill. Jan. 21, 2015). Because the County has failed to allege facts establishing its claims for racketeering or fraud, its unjust enrichment claim predicated on the same underlying

allegations must also be dismissed. *Martis v. Grinnell Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017, 1025 (2009) ("Because there was no valid underlying fraud claim, the trial court properly dismissed plaintiff's unjust enrichment claim.").

## VI. THE COUNTY'S CIVIL CONSPIRACY CLAIM FAILS BECAUSE IT HAS NOT ALLEGED AN ACTIONABLE UNDERLYING TORT.

Under Illinois law, "[c]onspiracy is not an independent tort." *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 936 (2004). "When 'a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for a conspiracy also fails.'" *Law Offs. of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1133 (7th Cir. 2022) (quoting *Indeck N. Am. Power Fund, L.P. v. Norweb, P.L.C.*, 316 Ill. App. 3d 416, 432 (2000)). As set forth above, each of the County's claims are defective. Because each of the County's claims against OptumRx must be dismissed, its civil conspiracy claim must be dismissed as well.

## VII. THE COURT SHOULD DISMISS OPTUMRX'S CORPORATE PARENTS AND AFFILIATE ENTITIES.

OptumRx's corporate parents (UHG and Optum, Inc.) and affiliate (OptumInsight, Inc.) should be dismissed because, as demonstrated above, the County's complaint fails to state a claim on which relief can be granted. The County's claims against UHG, Optum, Inc., and OptumInsight also fail for an independent reason: There are no allegations showing any of them had any involvement in the challenged conduct. Instead, the County simply lumps the corporate parents and affiliate into the substantive allegations against OptumRx. *See* Compl. ¶ 201.

The County does not plausibly allege misconduct by OptumRx's corporate parents or affiliate; it claims only that the parent and affiliate companies share interlocking directorships, direct overarching company policy, and profit from the alleged Manufacturer–PBM conspiracy. *See, e.g.,* Compl. ¶ 200. "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its

22

subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation and quotation marks omitted). "In Illinois, the principle that '[a] corporation is a legal entity separate and distinct from its shareholders, directors, and officers . . . . applies even where one corporation wholly owns another and the two have mutual dealings.'" *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 380 (7th Cir. 2008) (quoting *Joiner v. Ryder Sys. Inc.*, 966 F. Supp. 1478, 1483 (C.D. Ill. 1996)). The allegations against UHG, Optum, Inc., and OptumInsight must be dismissed because the State fails to plead facts plausibly demonstrating that any of those companies is OptumRx's alter ego. *See id.*, at 381 ("While having common officers and directors is generally a prerequisite to piercing the corporate veil, this factor is insufficient to justify disregarding the corporate form because it is a common business practice that exists in most parent and subsidiary relationships.").

In a similar insulin-pricing suit with almost identical allegations, the United States District Court for the Southern District of Mississippi dismissed UHG, Optum, Inc, and OptumInsight, Inc. for lack of personal jurisdiction because the State of Mississippi failed to make sufficiently particularized allegations that would support piercing the corporate veil: "The Court finds that the State failed to make such particularized allegations. The State does not particularly allege any frustration of expectation of performance, a flagrant disregard for corporate formalities by any of the Moving Defendants, or a demonstration of fraud by any Moving Defendant." *Mississippi ex. rel. Fitch v. Eli Lilly & Co.*, No. 21-cv-00674 (S.D. Miss. Aug. 15, 2022), ECF No. 112, slip op. at 14–16. The same result should obtain here because the County fails to allege any facts that would support piercing the corporate veil.

Inasmuch as the County tries to assert a claim based on OptumInsight's alleged conduct, it fares no better. The County alleges in conclusory fashion that OptumInsight is "an integral part"

of the "Insulin Pricing Scheme," but it fails to provide a factual basis for that allegation, alleging only that OptumInsight "coordinated directly with the Manufacturer Defendants in furtherance of the conspiracy" and that it "analyzed data and other information from the Manufacturer Defendants to advise the other Defendants with regard to the profitability of the Insulin Pricing Scheme to the benefit of all Defendants." Compl. ¶ 199. Those are conclusory allegations that fail to plausibly allege any misconduct by OptumInsight. *See Iqbal*, 556 U.S. at 678. They fail by an even wider margin under Rule 9(b). *See Camasta*, 761 F.3d at 737 (Rule 9(b) ordinarily requires describing the who, what, when, where, and how of the alleged fraud). The County named UHG, Optum, Inc., and OptumInsight as Defendants because of their affiliation with OptumRx. But it does not (and cannot) allege facts that would justify this Court piercing the corporate veil under an alter-ego theory. Accordingly, the claims against UHG, Optum, Inc., and OptumInsight should be dismissed.

## VIII.   THE COUNTY'S CLAIMS ARE TIME-BARRED.

The complaint should also be dismissed because "the allegations . . . plainly reveal[] that [each of the claims] is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). The County's Consumer Fraud, RICO, and unjust-enrichment claims are governed by three-, four-, and five-year statutes of limitations respectively. *See* 805 ILCS 505/10a(e) (ICFA); 15 U.S.C. § 15b (RICO); *Mann v. Thomas Place, L.P.*, 2012 Ill. App (1st) 110625-U, ¶¶ 14–15 (unjust enrichment). The County filed its complaint on April 18, 2023. ECF No. 1. So even using the longest five-year limitations periods, the County's claims are time-barred if it knew or should have known about its alleged injuries before April 18, 2018.

The complaint confirms that the County should have known of its claims before then. The County challenges price increases transpiring "[o]ver the course of the last 20 years" (Compl. ¶ 13), references government investigations and hearings that began as early as 2011 (*id.* ¶ 147), and

relies on public articles dating back to 2016 discussing PBM "incentive[s] to inflate drug prices." *Id.* ¶ 353 n.60. And perhaps most important, its allegations borrow from many earlier lawsuits, the first of which was filed more than five years ago in February 2017. *See* Compl., *In re Insulin Pricing Litig.*, No. 17-cv-699 (D.N.J. Feb. 2, 2017), ECF No. 1. The County offers no reason why it failed to discover the facts underlying this lawsuit when other similarly situated plaintiffs did.

Nor can the County invoke tolling doctrines. The discovery rule does not apply because the County "should have known" about its injuries before April 2018. *Axe v. Norfolk S. Ry. Co.*, 2012 Ill. App (5th) 110277-U, ¶ 11; *Rotella v. Wood*, 528 U.S. 549, 555 (2000). The County has offered no *facts* to support a claim of fraudulent concealment (which is subject to Rule 9(b)'s particularity requirements, *Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 900 (N.D. Ill. 2009)), or equitable tolling (which requires actions "above and beyond the wrongdoing upon which the plaintiff's claim is founded," *Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 595 (7th Cir. 2001)). And the continuing-violation doctrine doesn't apply to RICO claims. *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 386–87 (7th Cir. 2010). Even if it did, the "violation" is not each insulin sale, but each act of fraud, and the County does not identify any fraudulent activity by OptumRx occurring after 2018.

## CONCLUSION

For the reasons set forth above, the County's claims against OptumRx, UnitedHealth Group, Optum, Inc., and OptumInsight should be dismissed.

Dated:    July 14, 2023                   Respectfully submitted,

                                          **ALSTON & BIRD LLP**
                                     By:  /s/ *Patricia Brown Holmes*
                                          Patricia Brown Holmes
                                          Lucas Rael
                                          **RILEY SAFER HOLMES & CANCILA LLP**
                                          70 W Madison St Suite 2900
                                          Chicago, IL 60602
                                          T: (312) 471-8700
                                          pholmes@rshc-law.com
                                          lrael@rshc-law.com

                                          Brian D. Boone (*pro hac vice* application
                                          forthcoming)
                                          Michael Hoernlein (*pro hac vice* application
                                          forthcoming)
                                          **ALSTON & BIRD LLP**
                                          1120 S. Tryon Street, Suite 300
                                          Charlotte, NC 28280
                                          T: (704) 444-1000
                                          brian.boone@alston.com
                                          michael.hoernlein@alston.com

                                          Kelley Barnaby (*pro hac vice* application
                                          forthcoming)
                                          **ALSTON & BIRD LLP**
                                          950 F Street, NW
                                          Washington, DC 20004
                                          T: (202) 239-3687
                                          kelley.barnaby@alston.com

                                          Elizabeth Broadway Brown (*pro hac vice*
                                          application forthcoming)
                                          **ALSTON & BIRD LLP**
                                          1201 West Peachtree Street
                                          Suite 4900
                                          Atlanta, GA 30309
                                          T: (404) 881-7000
                                          liz.brown@alston.com

                                          *Attorneys for Defendant OptumRx, Inc., Optum,*
                                          *Inc., OptumInsight, Inc., and UnitedHealth Group,*
                                          *Inc.*

                                          26