IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LAKE COUNTY, ILLINOIS, *Plaintiff,* v. ELI LILLY AND COMPANY, *et al.*, *Defendants.* | Case No. 1:23-cv-02402 |

**CVS CAREMARK DEFENDANTS' MEMORANDUM SUPPORTING THEIR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

NIXON PEABODY LLP
70 W. Madison, Suite 5200
Chicago, Illinois 60602
Tel: (312) 977-400
Firm ID: 43523

WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029

*Attorneys for CVS Health Corporation, CVS Pharmacy, Inc., Caremark RX, L.L.C., CaremarkPCS Health, L.L.C., and Caremark, L.L.C.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

LEGAL STANDARD................................................................................................................... 4

ARGUMENT ................................................................................................................................ 5

I.    THE COUNTY FAILS TO PLEAD THE ELEMENTS OF A RICO
CONSPIRACY CLAIM AGAINST CVS CAREMARK. .................................................. 5

II.   THE COUNTY FAILS TO PLEAD A CIVIL CONSPIRACY CLAIM
AGAINST CVS CAREMARK........................................................................................... 9

III.  THE COURT SHOULD DISMISS ALL CLAIMS AGAINST CVS
HEALTH CORP. AND CVS PHARMACY, INC. ........................................................... 11

IV.  CERTAIN OTHER DEFECTS IDENTIFIED BY THE OTHER
DEFENDANTS ALSO DEFEAT THE COUNTY'S CLAIMS. ..................................... 13

CONCLUSION........................................................................................................................... 13

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................................4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................................4

*Bobb v. Swartz-Retson P.C.*, 2018 WL 4384292 (N.D. Ill. Sept. 14, 2018) .................................13

*Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502 (7th Cir. 2007) ..............................9, 10, 11

*DeGuelle v. Camilli*, 664 F.3d 192 (7th Cir. 2011) ..............................................................................8

*Domanus v. Locke Lord LLP*, 847 F.3d 469 (7th Cir. 2017) ................................................5, 7, 8, 9

*Fund Recovery Servs., LLC v. RBC Cap. Mkts., LLC*, 2022 WL 142404 (N.D. Ill. Jan. 17, 2022) .................................................................................................................................................7

*Gas Tech. Inst. v. Rehmat*, 524 F. Supp. 2d 1058 (N.D. Ill. Nov. 9, 2007) ....................................4

*Goren v. New Vision Int'l, Inc.*, 156 F.3d 721 (7th Cir. 1998) ............................................... passim

*Horist v. Sudler & Co.*, 941 F.3d 274 (7th Cir. 2019) ......................................................................13

*IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537 (7th Cir. 1998) ...............................11

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ............................................................................13

*In re EpiPen Direct Purchaser Litig.*, 2021 WL 147166 (D. Minn. Jan. 15, 2021) ......................11

*Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930 (7th Cir. 2012) ................................9

*Krakow Bus. Park v. Locke Lord, LLP*, 135 F. Supp. 3d 770 (N.D. Ill. Sept. 28, 2015) .................5

*Lachmund v. ADM Inv. Servs., Inc.*, 191 F.3d 777 (7th Cir. 1999) .................................................7

*Markovic v. TRU Funding LLC*, 2023 WL 2612594 (N.D. Ill. Mar. 23, 2023) ............................6

*Mississippi ex rel. Fitch v. Eli Lilly & Co.*, 2022 WL 18401603 (S.D. Miss. Aug. 29, 2022) .................................................................................................................................................12

*Mississippi ex rel. Fitch v. Eli Lilly & Co.*, No. 21-CV-674 (S.D. Miss. Aug. 15, 2022), slip op. ..............................................................................................................................................11

*Moeckel v. Caremark Rx Inc.*, 385 F. Supp. 2d 668 (M.D. Tenn. 2005) .......................................12

*Muskegan Hotels, LLC v. Patel*, 986 F.3d 692 (7th Cir. 2021) ..................................................4, 7

*Pullins v. Reuters News & Media Inc.*, 2023 WL 1514414 (7th Cir. Feb. 3, 2023) ...................... 10

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) ................................................................................. 6

*Saleh v. Merchant*, 2018 WL 287748 (N.D. Ill. Jan. 4, 2018) .......................................................... 8

*Sears v. Likens*, 912 F.2d 889 (7th Cir. 1990) ............................................................................... 10

*Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034 (N.D. Ill. 2007) ...................................................... 10

*Sols. Team v. Oak St. Health, MSO, LLC.*, 2020 WL 5630468 (N.D. Ill. Sept. 21, 2020) ...... 10, 13

*United Food & Com. Workers Union & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013) ................................................................... *passim*

*United States v. Bestfoods*, 524 U.S. 51 (1998) ............................................................................. 11

*United States v. Garcia*, 754 F.3d 460 (7th Cir. 2014) .................................................................... 6

*United States v. Neapolitan*, 791 F.2d 489 (7th Cir. 1986) ......................................................... 5, 6

*Webber v. Armslist LLC*, 70 F.4th 945 (7th Cir. 2023) .................................................................. 11

**OTHER AUTHORITIES**

18 U.S.C. § 1962(c) ................................................................................................................ 3, 5, 6

18 U.S.C. § 1962(d) ......................................................................................................................... 5

Illinois Consumer Fraud and Deceptive Business Practices Act ........................................... 1, 4, 13

Racketeer Influenced and Corrupt Organizations Act ........................................................ *passim*

Fed. Rule Civ. P. 8 ...................................................................................................................... 4, 10

Fed. Rule Civ. P. 9(b) ............................................................................................................ 4, 9, 10

**INTRODUCTION**

Plaintiff Lake County does not allege that CVS Caremark[1] engaged directly in any wrongful conduct. It does not claim that CVS Caremark was a direct participant in a RICO enterprise. It does not claim that CVS Caremark violated the Illinois Consumer Fraud and Deceptive Business Practices Act. And it does not claim that CVS Caremark unjustly enriched itself at the County's expense. Instead, the County asserts that CVS Caremark conspired with its two fiercest competitors to help those competitors make more money at the expense of a client whose business CVS Caremark has sought in the past and will likely seek again in the future.

That allegation is absurd on its face and the County pleads no facts to support it. The County fails to allege that CVS Caremark agreed to conduct or participate in the affairs of a RICO enterprise, or that CVS Caremark agreed that someone would commit predicate acts in furtherance of a RICO enterprise's goals. Those omissions are fatal to the County's RICO-conspiracy claim. The County's civil-conspiracy claim fails for similar reasons. The Complaint does not identify what role each alleged conspirator played in the alleged conspiracy, instead relying on vague references to "defendants" or "PBMs." And the County fails to allege any facts (much less particularized ones) suggesting an agreement or coordination between CVS Caremark and its competitors. Finally, the Complaint contains no allegations connecting CVS Caremark's corporate parent, CVS Health, and its affiliate, CVS Pharmacy, to this case.

The Court should dismiss the County's two claims against CVS Caremark.

---

[1] We refer to CVS Health Corporation ("CVS Health"), CVS Pharmacy, Inc. ("CVS Pharmacy"), Caremark Rx, L.L.C., CaremarkPCS Health, L.L.C., and Caremark, L.L.C. collectively as "CVS Caremark."

## BACKGROUND

The Manufacturer Defendants are pharmaceutical companies that research, develop, manufacture, and sell prescription drugs, including insulin and other diabetes medications. Compl. ¶¶ 5, 46, 57, 68. The Manufacturer Defendants set the list prices for their products. *Id*. ¶¶ 13, 18(c).

Express Scripts, OptumRx, and CVS Caremark are PBMs. Health plan sponsors and other third-party payors engage PBMs to perform a range of services, including negotiating discounts off of manufacturers' list prices. *See id*. ¶ 289. The discounts PBMs negotiate are memorialized in contracts where manufacturers agree to provide rebates off of the list price of their drugs. *Id.* ¶¶ 19, 289, 334. PBMs pass some or all of those rebates through to their payor clients pursuant to the terms of the PBMs' contracts with those clients. *Id*. ¶¶ 289, 367. In addition, PBMs develop lists of approved drugs, called "formularies." Formularies establish which drugs within a therapeutic category (for example, a particular brand's insulin) will be reimbursed by the payor. *Id.* ¶¶ 9, 18(b). Clients can choose to adopt or modify one of the PBM's "standard formularies" for their covered beneficiaries. *Id.* ¶¶ 116, 328.

PBMs compete for payor clients like the County. For example, the County maintained significant health plans with total enrollment ranging between 5,000 and 6,000 members during the relevant time period. *Id.* ¶ 40. Accordingly, payors like the County routinely solicit proposals from PBMs to enter into PBM-payor contracts, and PBMs bid against one another for payors' business. *Id.* ¶ 42. All three PBM defendants have in the past submitted bids to serve as the County's PBM. *Id*.

In this case, the County alleges that "Express Scripts and OptumRx both provided PBM services to Plaintiff." Compl. ¶ 42; *see id*. ¶¶ 18(a), 136-137, 174, 196, 279. "These PBM services," the State alleges, "included developing and offering formularies for Plaintiff's

2

prescription plan, constructing and managing Plaintiff's pharmacy network (which included the PBMs' retail and mail-order pharmacies), processing pharmacy claims, and providing mail-order pharmacy services to Plaintiff." *Id*. ¶ 413. In that PBM role, the County further alleges that Express Scripts and OptumRx "set the price that Plaintiff paid for the at-issue drugs" and "routinely invoiced Plaintiff Lake County for the at-issue diabetes medications." *Id*. ¶¶ 169, 279; *see id*. ¶ 414. The County claims that those prices were artificially inflated due to the course of negotiations between Express Scripts, OptumRx, and the Manufacturer Defendants, such that the County "has been overcharged substantial amounts of money." *Id*. ¶ 29; *see id*. ¶ 335.

The County asserts a RICO claim under 18 U.S.C. § 1962(c) against the Manufacturer Defendants, Express Scripts, and OptumRx (Count 1). *See* Compl. ¶¶ 514-572. In support, the County alleges six RICO "association-in-fact" enterprises, each consisting of one manufacturer and either Express Scripts or OptumRx—*not* CVS Caremark. *Id*. ¶¶ 519-537. The County alleges that "[e]ach Manufacturer-PBM Enterprise is a separate, ongoing, and continuing business organization," that is associated for a common purpose. *Id.* ¶ 521. For example, the County alleges that an enterprise consisting of Eli Lilly and OptumRx "associates for the common purpose of manufacturing, selling, distributing, and facilitating the purchase of Eli Lilly medications." *Id.* ¶ 521(a). The Complaint contains substantially similar allegations about purported enterprises between Express Scripts and OptumRx, on the one hand, and each of the Manufacturer Defendants, on the other—again, *not* CVS Caremark. *Id.* ¶ 521.

The County does not allege that CVS Caremark ever provided PBM services to the County. The County does not allege that it ever paid CVS Caremark for diabetes medications. And the County has not alleged that CVS Caremark is a constituent of any of the alleged RICO enterprises. The County, therefore, does not bring any direct claims against CVS Caremark under RICO or the

3

Illinois Consumer Fraud and Deceptive Business Practices Act, *id*. ¶¶ 581-596, and does not name CVS Caremark in its unjust enrichment claim, *id*. ¶¶ 613-629. Rather, the County has named CVS Caremark as a defendant in two conspiracy counts: one under RICO and one for civil conspiracy (Counts 2 and 4). *See id*. ¶¶ 573-580, 597-612.

## **LEGAL STANDARD**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility "above the speculative level." *Twombly*, 550 U.S. at 555.

"[T]he plausibility standard . . . ask[s] for more than a sheer possibility that a defendant has acted unlawfully." *United Food & Com. Workers Union & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013). It is also defendant-specific, so that in a RICO case with multiple defendants, a complaint "cannot be saved by its many conclusory and vague allegations concerning the collective conduct of the defendants." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 733 (7th Cir. 1998) (quotation marks omitted). Furthermore, when a case alleges conspiracy, the "need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects Rule 8(a)(2)'s threshold requirement that the 'plain statement' possess heft 'to show that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557 (alteration omitted).

Because the County's claims sound in fraud, the County also must satisfy Rule 9(b)'s heightened pleading standard. *See, e.g.*, *Gas Tech. Inst. v. Rehmat*, 524 F. Supp. 2d 1058, 1074 (N.D. Ill. 2007). The "complaint must describe the who, what, when, where, and how of the fraudulent activity." *Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 698 (7th Cir. 2021) (quotation

4

marks omitted). When, as here, the complaint identifies multiple defendants, "Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren*, 156 F.3d at 726.

## ARGUMENT

### I. THE COUNTY FAILS TO PLEAD THE ELEMENTS OF A RICO CONSPIRACY CLAIM AGAINST CVS CAREMARK.

"[T]he touchstone of liability under § 1962(d) is an agreement to participate in an endeavor which, if completed, would constitute a violation of the substantive statute." *United Food*, 719 F.3d at 856 (quoting *Goren*, 156 F.3d at 732). Thus, "to plead a viable § 1962(d) claim, a plaintiff must allege that a defendant 'agreed to the objective of a violation of RICO.'" *Goren*, 156 F.3d at 732 (quoting *United States v. Neapolitan*, 791 F.2d 489, 498 (7th Cir. 1986), *abrogated on other grounds, as recognized by United States v. Tello*, 687 F.3d 785 (7th Cir. 2012)). "An agreement to participate in the affairs of an enterprise is an agreement to knowingly facilitate the activities of those who are operating the enterprise in an illegal manner." *Krakow Bus. Park v. Locke Lord, LLP*, 135 F. Supp. 3d 770, 787 (N.D. Ill. Sept. 28, 2015), *aff'd sub nom.*, *Domanus v. Locke Lord LLP*, 847 F.3d 469 (7th Cir. 2017).

The Seventh Circuit has "cautioned . . . that the broad construction of the RICO conspiracy provision should not be used by the courts 'to criminalize mere association with an enterprise.'" *Goren*, 156 F.3d at 731-32 (quoting *Neapolitan*, 791 F.2d at 498). "[M]ere association with conspirators is," likewise, "not enough." *Domanus*, 847 F.3d at 482. As a result, allegations that "are easily explained by [the defendant's] own self-interest," are insufficient to establish an agreement. *Id.*

The Seventh Circuit has explained that a RICO conspiracy claim actually is "composed of two agreements." *Goren*, 156 F.3d at 732 (quoting *Neapolitan*, 791 F.2d at 499). A plaintiff

5

alleging a conspiracy to violate 18 U.S.C. § 1962(c) must plead "[1] an agreement to conduct or participate in the affairs of an enterprise and [2] an agreement to the commission of at least two predicate acts." *Neapolitan*, 791 F.2d at 499; *see also Goren*, 156 F.3d at 732. "The absence of either of these is fatal to the claim." *Markovic v. TRU Funding LLC*, 2023 WL 2612594, at *3 (N.D. Ill. Mar. 23, 2023). The County's Complaint fails on both fronts.

*First*, the County does not plead that CVS Caremark agreed to conduct or participate in the affairs of the alleged enterprises. Because the County asserts a conspiracy to violate 18 U.S.C. § 1962(c), it must allege that CVS Caremark "conspired to participate (in the way defined by § 1962(c)) in the [alleged] racketeering operations." *United States v. Garcia*, 754 F.3d 460, 477 (7th Cir. 2014). The Complaint therefore must allege that CVS Caremark agreed to "'participate[] in the operation or management of the enterprise itself,' and . . . play[] 'some part in directing the enterprise's affairs." *Goren*, 156 F.3d at 727 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)).

The Complaint alleges six enterprises, each consisting of either Express Scripts or OptumRx, and one Manufacturer Defendant. The County does not allege that CVS Caremark is a member of any purported enterprise. And the County's own allegations undercut any notion that CVS Caremark agreed to conduct or participate in any alleged enterprise's affairs. The County, for example, alleges that PBMs are in fierce competition for clients, that they competitively bid against one another, that their payor clients make the ultimate decision about which PBM to hire, and that payor clients (like the County) are ready, willing, and able to change horses if another PBM's offerings are more favorable. *See* Compl. ¶¶ 42, 410, 439, 468-72. The County also alleges that CVS Caremark has its own separate business relationship with the Manufacturer Defendants

in the form of express rebate agreements negotiated on behalf of CVS Caremark's own clients. *Id.* ¶ 122.

Each of the alleged enterprises, in other words, consists of: (1) one of CVS Caremark's direct competitors; and (2) one of CVS Caremark's contracting counterparties in its own separate business relationships; (3) negotiating transactions for a client for which CVS Caremark has competed and will compete. The County fails to allege how or why CVS Caremark would be allowed to "conduct" or "participate in the affairs" of the core business dealings of its direct competitors. On the contrary, the Complaint is replete with allegations that the rebate payments within each alleged enterprise are "secret" and "undisclosed." *Id.* ¶¶ 19, 24, 31, 329, 363-82, 459, 528, 535.[2] The Complaint fails because it does not allege "any 'facts indicating an agreement by the [defendants] as to which roles they would play in the enterprise.'" *Lachmund v. ADM Inv. Servs., Inc.*, 191 F.3d 777, 785 (7th Cir. 1999) (alteration in original) (quoting *Goren*, 156 F.3d at 732).

Nor does the Complaint's allegation that manufacturers raised list prices and PBMs benefitted through a corresponding increase in rebates sustain the County's RICO-conspiracy claim. *E.g.*, Compl. ¶ 531. For one thing, the mere fact of a commercial benefit to parties other than CVS Caremark comes nowhere close to establishing the agreement Plaintiffs must plead to maintain a RICO conspiracy claim. *Fund Recovery Servs., LLC v. RBC Cap. Mkts., LLC*, 2022 WL 142404, at *12 (N.D. Ill. Jan. 17, 2022) (dismissing RICO conspiracy claim because complaint alleged only that "defendants financially benefited from the alleged [RICO violations]"). In any event, as the County's own allegations make clear, any benefit to the PBMs from manufacturers'

---

[2] For this reason, the County also fails to allege that CVS Caremark had "knowledge" of the alleged fraud, which alone is fatal to its claims. *See, e.g.*, *Muskegan Hotels, LLC*, 986 F.3d at 699; *Domanus*, 847 F.3d at 479.

7

price increases arise from the general structure of the health-care industry, not any of the specific, two-entity enterprises alleged. *E.g.*, Compl. ¶ 372, 344. Any effort by CVS Caremark to seek increased rebates, including through formulary decisions, is "easily explained by [CVS Caremark's] own self-interest" in "making money and keeping [its] client[s] happy." *Domanus*, 847 F.3d at 482.

*Second and independently*, the County does not allege that Caremark agreed "someone would commit at least two predicate acts to accomplish [the enterprise's] goals." *United Food*, 719 F.3d at 856 (quoting *DeGuelle v. Camilli*, 664 F.3d 192, 204 (7th Cir. 2011)). To satisfy this element, the County must "allege an agreement by [CVS Caremark] to the commission . . . of two specific predicate acts on behalf of the enterprise." *Goren*, 156 F.3d at 732. Here, the alleged predicate acts consist of supposedly fraudulent statements made by the Manufacturer Defendants, Express Scripts, and OptumRx. *E.g.*, Compl. ¶¶ 553-58. But the Complaint does not contain any particularized allegations that CVS Caremark would have entered any agreement regarding statements made by other entities about those entities' own products.

It is implausible that CVS Caremark would have agreed that any party undertake racketeering activities "**on behalf of the [alleged] enterprise[s]**." *Goren*, 156 F.3d at 732. To allege this element, the County must plead that CVS Caremark agreed to racketeering conduct in order to further the "interests of a distinct entity—the enterprise" rather than "simply pursuing [its] own affairs." *Saleh v. Merchant*, 2018 WL 287748, at *5 (N.D. Ill. Jan. 4, 2018) (quoting *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 389 (7th Cir. 2010)). Each alleged enterprise is supposedly was created for the purpose of manufacturing, selling, distributing, and facilitating the purchase of the relevant manufacturers' pharmaceutical drugs pursuant to services provided by the corresponding PBM—Express Scripts or OptumRx. Compl. ¶ 521. CVS

8

Caremark's interests are directly antithetical to those alleged purposes. CVS Caremark competes with Express Scripts and OptumRx to offer PBM services, including negotiating the best possible rebates for its clients pursuant to its own separate agreements with manufacturers. *Id.* ¶ 122. For that reason, the County's allegations about CVS Caremark's statements fail. *E.g.*, *id.* ¶ 433. The County cannot plausibly allege that CVS Caremark made statements about its own services in order to increase sales to its direct competitors. To the extent the Complaint alleges any wrongdoing by CVS Caremark, it plainly occurred "outside the scope of the RICO conspiracy asserted in this case" and is insufficient to support the County's RICO-conspiracy claims. *Domanus*, 847 F.3d at 482.

## II. THE COUNTY FAILS TO PLEAD A CIVIL CONSPIRACY CLAIM AGAINST CVS CAREMARK.

A civil conspiracy is a "combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 938 (7th Cir. 2012). Illinois law requires a plaintiff asserting such a claim to allege "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)). "There is no such thing as accidental, inadvertent or negligent participation in a conspiracy," and the defendant must have "understood the general objectives of the conspiratorial scheme, accepted them, and agreed, either explicitly or implicitly to do its part to further those objectives." *Indep. Tr. Corp.*, 665 F.3d at 939 (cleaned up).

9

A civil conspiracy claim, like this one, that sounds in fraud must satisfy Rule 9(b)'s heightened pleading standard. *Borsellino*, 477 F.3d at 507; *see Sols. Team v. Oak St. Health, MSO, LLC*, 2020 WL 5630468, at *11 (N.D. Ill. Sept. 21, 2020). The plaintiff must therefore "describe the who, what, when, where, and how of the fraud." *Pullins v. Reuters News & Media Inc.*, 2023 WL 1514414, at *1 (7th Cir. Feb. 3, 2023) (quotation marks omitted).

The Complaint fails that standard because the County does not allege, with the requisite particularity, the "circumstances constituting the conspiracy." *Borsellino*, 477 F.3d at 509. Instead of alleging particularized facts about each defendant's supposed role in the conspiracy, the Complaint refers to "PBM Defendants" or "PBMs" more than 100 times each. *E.g.*, Compl ¶¶ 6-11, 19, 20, 24, 25. Such allegations "lump[ing] together" the defendants are insufficient to satisfy Rule 9(b). *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (citation omitted); *see Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1043 (N.D. Ill. 2007). The County's group pleading is particularly improper here because CVS Caremark is situated differently than the other defendants. The County alleges that it overpaid for certain insulin products in its capacity as a health plan payor, but it acknowledges that CVS Caremark did not provide PBM services to the County, nor did it have any involvement with the insulin products for which the County allegedly overpaid.

The Complaint also fails to allege any facts to suggest an agreement or coordination between CVS Caremark and the performance of PBM services and sale of pharmaceutical drugs to the County. On the contrary, the Complaint alleges that CVS Caremark actively bid ***against*** other PBM Defendants in an effort to obtain the County's business, but ultimately failed to do so. *E.g.*, Compl. ¶ 42. It defies common sense, Rule 8 plausibility, and Rule 9(b) particularity, to claim that CVS Caremark agreed to cause the County to make outsized payments to its direct competitors pursuant to a contract that CVS Caremark tried to obtain for itself. Plaintiffs therefore

have failed to allege CVS Caremark's "intentional participation in the transaction with a view to the furtherance of the common design." *Webber v. Armslist LLC*, 70 F.4th 945, 967 (7th Cir. 2023) (citation omitted); *see Borsellino*, 477 F.3d at 509 (dismissing conspiracy claim because the allegations "tell[ the Court] nothing about the nature of the purported agreement to defraud the plaintiffs, such as when it was made or which individuals . . . arranged the conspiracy").

### III. THE COURT SHOULD DISMISS ALL CLAIMS AGAINST CVS HEALTH CORP. AND CVS PHARMACY, INC.

CVS Caremark's uninvolved corporate parent (CVS Health) and affiliate (CVS Pharmacy) should be dismissed from this action.

The County does not allege that CVS Health itself engaged in any misconduct. It claims instead that, as a corporate parent, CVS Health owns or shares employees with certain PBM subsidiary entities, directs some unspecified overarching company policy, and profits from the alleged Manufacturer-PBM "scheme." Compl. ¶¶ 81, 110. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation and quotation marks omitted). "Parents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent, but unless there is a basis for piercing the corporate veil and thus attributing the subsidiaries' torts to the parent, the parent is not liable for those torts." *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998). Because the County has alleged insufficient facts demonstrating the PBM subsidiaries are alter egos of CVS Health, the claims against CVS Health must be dismissed. *See Mississippi ex rel. Fitch v. Eli Lilly & Co.*, No. 21-CV-674 (S.D. Miss. Aug. 15, 2022), slip op. at 14-16 (concluding plaintiff failed to allege facts supporting veil piercing as to PBM's parent and affiliates); *In re EpiPen Direct Purchaser Litig.*, 2021 WL 147166, at *22 (D. Minn. Jan. 15, 2021) (dismissing claims against

11

PBMs' corporate parents where plaintiffs failed to tie public statements of parents to alleged scheme); *Moeckel v. Caremark Rx Inc.*, 385 F. Supp. 2d 668, 674 (M.D. Tenn. 2005) (dismissing PBM's parent from suit).

The allegations against CVS Pharmacy are likewise "insufficient to plausibly plead [its] involvement in the alleged" scheme, as another federal court recently found based on nearly identical allegations. *See Mississippi ex rel. Fitch v. Eli Lilly & Co.*, 2022 WL 18401603, at *5 (S.D. Miss. Aug. 29, 2022) (dismissing all claims against CVS Pharmacy in another case about alleged "Insulin Pricing Scheme"). Beyond asserting that CVS Pharmacy is an affiliate of certain PBM subsidiaries, the County alleges only that CVS Pharmacy operates retail pharmacies and provides retail pharmacy services. Compl. ¶¶ 89-94. But the County has not pled any misconduct by *retail pharmacies*. The Complaint divides the defendants into just two categories—"PBM Defendants" and "Manufacturer Defendants." *Id*. ¶¶ 5-6. The Complaint goes on to categorize CVS Pharmacy as a "PBM Defendant," but only by lumping it together with CVS Health and several subsidiary entities as "CVS Caremark." *Id*. ¶ 111. The County never alleges CVS Pharmacy had any involvement in the alleged PBM-Manufacturer conduct the County contends amounted to the scheme. *Id*. ¶ 12. The County alleges only that CVS Pharmacy retained the difference between the acquisition costs for the drugs at issue and the amounts received from payors. *Id.* ¶ 119. But it is standard practice for pharmacies (and indeed all businesses) to retain the difference between the amount at which a product is purchased and the amount for which it is sold—and the County does not allege otherwise. The allegation that CVS Pharmacy was paid for drugs that it dispensed and its services in connection therewith, *like all retail pharmacies*, is insufficient to support a plausible inference that CVS Pharmacy was involved in the alleged scheme.

12

The County has not come close to stating a plausible claim against CVS Health or CVS Pharmacy, and the Court should dismiss all claims against them.

## IV. CERTAIN OTHER DEFECTS IDENTIFIED BY THE OTHER DEFENDANTS ALSO DEFEAT THE COUNTY'S CLAIMS.

The other defendants in this action have filed motions to dismiss, arguing that the statute of limitations bars the County's claims, that *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) precludes the County's RICO claims because the County is not a direct purchaser, and that the County's direct claims under RICO, the Illinois Consumer Fraud Act, and state law fail on the merits. CVS Caremark will not repeat those arguments here but, for all those reasons, should the Court dismiss the underlying claims, the County's RICO and civil conspiracy claims fail as well because both claims require allegations of an underlying violation. *See, e.g.*, *Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019) (civil conspiracy); *United Food*, 719 F.3d at 856-57 (RICO conspiracy); *Bobb v. Swartz-Retson P.C.*, 2018 WL 4384292, at *10 (N.D. Ill. Sept. 14, 2018) (RICO conspiracy); *Sols. Team*, 2020 WL 5630468, at *11 (civil conspiracy).

## CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice the County's Complaint against the CVS Caremark Defendants.

Dated: July 14, 2023　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　*/s/ Elizabeth Zamora Meraz*
　　　　　　　　　　　　　　　　　　　　　　Enu Mainigi (*pro hac vice* forthcoming)
　　　　　　　　　　　　　　　　　　　　　　Craig Singer (*pro hac vice* forthcoming)
　　　　　　　　　　　　　　　　　　　　　　R. Kennon Poteat III (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　A. Joshua Podoll (*pro hac vice* forthcoming)
　　　　　　　　　　　　　　　　　　　　　　Daniel Dockery (*pro hac vice* forthcoming)
　　　　　　　　　　　　　　　　　　　　　　**WILLIAMS AND CONNOLLY LLP**
　　　　　　　　　　　　　　　　　　　　　　680 Maine Avenue SW
　　　　　　　　　　　　　　　　　　　　　　Washington, DC 20024
　　　　　　　　　　　　　　　　　　　　　　Tel: (202) 434-5000
　　　　　　　　　　　　　　　　　　　　　　Fax: (202) 434-5029

13

emainigi@wc.com
csinger@wc.com
kpoteat@wc.com
apodoll@wc.com
ddockery@wc.com

Kevin P. Shea
Elizabeth Z. Meraz
**NIXON PEABODY LLP**
70 W. Madison, Suite 5200
Chicago, IL 60602
T: 312.977.4400
Firm ID: 43523
kpshea@nixonpeabody.com
ezmeraz@nixonpeabody.com

*Attorneys for CVS Health Corporation, CVS Pharmacy, Inc., Caremark RX, L.L.C., CaremarkPCS Health, L.L.C., and Caremark, L.L.C.*

14