**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**CHICAGO DIVISION**

|  |  |
|---|---|
| LAKE COUNTY, ILLINOIS, | |
| Plaintiff, | |
| v. | Case No.: 1:23-cv-02402 |
| ELI LILLY AND COMPANY, et al., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF EXPRESS SCRIPTS DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................... 1

BACKGROUND .................................................................... 2

ARGUMENT ...................................................................... 3

I.  The County's Claims Are All Barred by the Statutes of Limitations. ................... 4

    A.  The County's Claims Have Expired. .......................................... 4

    B.  No Tolling Doctrine Can Save the County's Claims. ............................. 7

        1.  The Discovery Rule Does Not Apply. ........................................ 7

        2.  The County Has Not Established Fraudulent Concealment or Equitable Estoppel. ................................................... 7

        3.  The Continuing Violations Theory Cannot Apply ........................ 9

II.  The County's Claims Based on Conduct After 2017 Are Fatally Flawed. ........... 10

    A.  Express Scripts Did Not Proximately Cause Any Injury After 2017 ............................................................... 10

    B.  The County's RICO Claims Based on Conduct After 2017 Are Barred by the Indirect Purchaser Rule. ................................... 12

    C.  The County's Unjust Enrichment Claim Is Derivative. ........................ 13

III.  The County's Contracts with Express Scripts Are Fatal to the County's Claims Based on Conduct Before 2018. ........................................... 14

    A.  The County's Contracts Negate the County's Fraud Allegations. ........... 14

        1.  Express Scripts Lacked a Legal Duty to Disclose. ....................... 15

        2.  Express Scripts Disclosed Rebates and Other Manufacturer Revenue Barring Fraud Claims Based on Such Revenue. ........... 16

    B.  The Contract Bars a Quasi-Contractual Unjust Enrichment Claim. ........ 18

IV.  Lake County Failed to Plead Actionable Misrepresentations to Support Its RICO and ICFA Claims. ................................................... 18

    A.  Most of the Representations the County Identified Are Non-Actionable Puffery. ............................................................ 20

        1.  Express Scripts' General Commitments to Its Clients ................. 20

        2.  Express Scripts' Statements Supporting Transparency ............... 21

    B.  The Other Specific Representations Are Not False. ............................. 22

        1.  Express Scripts' Representations About Lowering the Price of Insulin for Patients ............................................... 22

i

2.    Representations About Express Scripts' P&T Committee .......... 23

V.    The County's Derivative Conspiracy Claims Fail. .............................................. 24

VI.   Defendant Evernorth Is Not Liable for the Actions of Its Subsidiaries. .............. 24

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
483 U.S. 143 (1987)................................................................................................4

*All. Acceptance Co. v. Yale Ins. Agency, Inc.*,
648 N.E.2d 971 (Ill. App. Ct. 1995) .....................................................................13

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ..............................................................................................11

*Apple Inc. v. Pepper*,
139 S. Ct. 1514 (2019) ..........................................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................3, 4

*In re AT&T/DirecTV Now Sec. Litig.*,
480 F. Supp. 3d 507 (S.D.N.Y. 2020)...................................................................22

*Axe v. Norfolk S. Ry. Co.*,
972 N.E.2d 243 (Ill. App. Ct. 2012) .......................................................................7

*Barbara's Sales, Inc. v. Intel Corp.*,
879 N.E.2d 910 (Ill. 2007) ....................................................................................20

*BCS Servs., Inc. v. Heartwood 88, LLC*,
637 F.3d 750 (7th Cir. 2011) ................................................................................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................3

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019) ................................................................................13

*Borto v. First Am. Title Co.*,
2017 WL 1270353 (Ill. App. Ct. Mar. 31, 2017)...................................................6

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008)..............................................................................................11

*Cada v. Baxter Healthcare Corp.*,
920 F.2d 446 (7th Cir. 1990) ..................................................................................7

*Calavan v. First Love Int'l Ministries*,
  590 F. Supp. 3d. 1131 (N.D. Ill. 2022) ...................................................................19

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
  761 F.3d 732 (7th Cir. 2014) ...............................................................................19

*Carlson v. Michael Best & Friedrich LLP*,
  186 N.E.3d 478 (Ill. App. Ct. 2021) .......................................................................7

*Carter v. Berger*,
  777 F.2d 1173 (7th Cir. 1985) ..............................................................................12

*Charles Hester Enters., Inc. v. Ill. Founders Ins. Co.*,
  484 N.E.2d 349 (Ill. App. Ct. 1985) ......................................................................13

*Clay v. Kuhl*,
  727 N.E.2d 217 (Ill. 2000) ....................................................................................5

*Cleary v. Philip Morris Inc.*,
  656 F.3d 511 (7th Cir. 2011) ................................................................................14

*Cohen v. Am. Sec. Ins. Co.*,
  735 F.3d 601 (7th Cir. 2013) ................................................................................18

*Cooper v. Durham Sch. Servs.*,
  2003 WL 22232833 (N.D. Ill. Sept. 22, 2003) ........................................................18

*Corley v. Rosewood Care Ctr., Inc. of Peoria*,
  388 F.3d 990 (7th Cir. 2004) ................................................................................20

*County of Harris, Texas v. Eli Lilly and Co. et al.*,
  4:19-cv-04994 (S.D. Tex.), ECF No. 1-1 ..................................................................6

*Das v. Rio Tinto PLC*,
  332 F. Supp. 3d 786 (S.D.N.Y. 2018) .....................................................................22

*Das v. Tata Consultancy Servs., Ltd.*,
  2023 WL 3627714 (N.D. Ill. May 24, 2023) ............................................................14

*De Bouse v. Bayer*,
  922 N.E.2d 309 (Ill. 2009) ...................................................................................12

*People ex rel. Dep't of Labor v. K. Reinke, Jr. & Co./Reinke Insulation*,
  746 N.E.2d 12 (Ill. App. Ct. 1983) ..........................................................................4

*Dimmitt & Owens Fin., Inc. v. Superior Sports Prods., Inc.*,
  196 F. Supp. 2d 731 (N.D. Ill. 2002) .....................................................................24

*Drobny v. JP Morgan Chase Bank, NA*,
    929 F. Supp. 2d 839 (N.D. Ill. 2013) .................................................................24

*Feltmeier v. Feltmeier*,
    798 N.E.2d 75 (Ill. 2003) ..................................................................................9

*Miss. ex rel. Fitch v. Eli Lilly & Co.*,
    No. 21-cv-674, slip op. (S.D. Miss. Aug. 15, 2022) ............................................25

*Foster v. Schock*,
    2017 WL 1178349 (N.D. Ill. 2017) ....................................................................20

*Gensler v. Strabala*,
    764 F.3d 735 (7th Cir. 2014) ............................................................................22

*Goren v. New Vision Int'l, Inc.*,
    156 F.3d 721 (7th Cir. 1998) ............................................................................24

*Greenberger v. GEICO Gen. Ins. Co.*,
    631 F.3d 392 (7th Cir. 2011) ........................................................................15, 17

*Harris County v. Eli Lilly and Co.*,
    2022 WL 479943 (S.D. Tex. Feb. 16, 2022) ......................................................13

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010) .............................................................................................11

*Holmes v. Sec. Inv. Prot. Corp.*,
    503 U.S. 258 (1992) .........................................................................................11

*Illinois Brick v. Illinois*,
    431 U.S. 720 (1977) .........................................................................................12

*In re Insulin Pricing Litig.*,
    No. 17-cv-699 (D.N.J. Feb. 2, 2017), ECF No. 1 .................................................5

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.*,
    610 F.3d 382 (7th Cir. 2010) ...................................................................1, 5, 8, 9

*Lake Cnty. Grading Co. of Libertyville v. Advance Mech. Contractors, Inc.*,
    654 N.E.2d 1109 (Ill. App. Ct. 1995) ................................................................17

*Lateef v. Pharmavite LLC*,
    2013 WL 1499029 (N.D. Ill. Apr. 10, 2013) ......................................................21

*LLC v. Waste Connections, Inc.*,
    2023 WL 2266147 (N.D. Ill. Feb. 28, 2023) ......................................................24

*Magna Bank of Madison Cnty. v. Jameson*,
    604 N.E.2d 541 (Ill. Ct. App. 1992) ...................................................15

*Mann v. Thomas Place, L.P.*,
    976 N.E.2d 554 (Ill. App. Ct. 2012) ...................................................4

*Mauvais-Jarvis v. Wong*,
    987 N.E.2d 864 (Ill. App. Ct. 2013) ...................................................4

*Menzies v. Seyfarth Shaw LLP*,
    943 F.3d 328 (7th Cir. 2019) ...........................................................19

*Neptuno Treuhand–Und Verwaltungsgesellschaft Mbh v. Arbor*,
    692 N.E.2d 812 (Ill. App. Ct. 1998) ...................................................15

*Nesby v. Country Mut. Ins. Co.*,
    805 N.E.2d 241 (Ill. App. Ct. 2004) ...................................................18

*Orlak v. Loyola Univ. Health Sys.*,
    885 N.E.2d 999 (Ill. 2007) ...........................................................7, 8

*Rodrigue v. Olin Emps. Credit Union*,
    406 F.3d 434 (7th Cir. 2005) ...........................................................9

*Rotella v. Wood*,
    528 U.S. 549 (2000) ...............................................................5, 7, 9

*Russell v. Dart*,
    2018 WL 2391115 (N.D. Ill. May 25, 2018) ...........................................21

*Shropshear v. Corp. Counsel of City of Chicago*,
    275 F.3d 593 (7th Cir. 2001) ...........................................................8

*Siegel v. Shell Oil Co.*,
    612 F.3d 932 (7th Cir. 2010) ................................................... *passim*

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ....................................................................24

*United States v. Lewis*,
    411 F.3d 838 (7th Cir. 2005) ...........................................................4

*Vanzant v. Hill's Pet Nutrition, Inc.*,
    934 F.3d 730 (7th Cir. 2019) ..........................................................14

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019) .................................................22

vi

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
987 F.2d 429 (7th Cir. 1993) ................................................................3

*Vicom, Inc. v. Harbridge Merch. Services, Inc.*,
20 F.3d 771 (7th Cir. 1994) ...............................................................19

*Vill. of DePue, Ill. v. Viacom Int'l, Inc.*,
713 F. Supp. 2d 774 (C.D. Ill. 2010) .....................................................9

*In re Vtech Data Breach Litig.*,
2018 WL 1863953 (N.D. Ill. Apr. 18, 2018) .........................................19

*Whirlpool Fin. Corp. v. GN Holdings, Inc.*,
67 F.3d 605 (7th Cir. 1995) ..................................................................6

*Whitley v. Taylor Bean & Whitacker Mortg. Corp.*,
607 F. Supp. 2d 885 (N.D. Ill. 2009) .....................................................8

*Williams v. Aztar Indiana Gaming Corp.*,
351 F.3d 294 (7th Cir. 2003) ...............................................................20

*Xechem, Inc. v. Bristol-Myers Squibb Co.*,
372 F.3d 899 (7th Cir. 2004) ................................................................4

**Statutes**

15 U.S.C. § 15b .....................................................................................4

18 U.S.C. § 1341 ..................................................................................18

18 U.S.C. § 1343 ..................................................................................18

18 U.S.C. § 1962(c) ..........................................................................3, 24

18 U.S.C. § 1962(d) ..........................................................................3, 24

735 ILCS 5/13-205 .................................................................................4

735 ILCS 5/13-215 .................................................................................7

805 ILCS 505/10a(e) ..............................................................................4

815 ILCS 505/1 .....................................................................................3

815 ILCS 505/2 ....................................................................................19

**Other Authorities**

42 C.F.R. § 423.120(b) ..........................................................................23

Fed. R. Civ. P. 9(b) ...............................................................................................8, 19, 22

Fed. R. Civ. P. 12(b)(6)...............................................................................................4

## INTRODUCTION

Lake County, Illinois ("the County" or "Lake County") complains that it pays too much for insulin. Although the price the County pays is governed by contracts with the Pharmacy Benefit Managers ("PBMs") it selects through a competitive bidding process, the County advances claims that do not sound in contract. Instead, the County speculates that the reason insulin prices have risen over the last decade is that certain PBMs[1] conspired with the three largest insulin manufacturers—Eli Lilly, Novo Nordisk, and Sanofi-Aventis ("Manufacturers")—to drive up insulin prices in exchange for rebates and other payments paid by the Manufacturers to the PBMs. This sweeping and implausible conspiracy fails at the threshold for multiple reasons, and does not state violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") or the Illinois Consumer Fraud Act ("ICFA"), or constitute unjust enrichment.

*First*, all of the County's claims are barred by the relevant limitations period. The longest limitations period for the County's claims is at most five years (unjust enrichment), but its statutory claims are even shorter—three years for the ICFA and four years for civil RICO. The County stopped using Express Scripts as a PBM in 2017 but filed its Complaint in April 2023. Complaints, including one that Lake County copied nearly word for word, were filed years before. And the Complaint is replete with citations to older news articles and other information it claims it needed before filing suit. The County waited too long before filing suit.

*Second*, the County's claims against Express Scripts relating to conduct after 2017, when Express Scripts stopped serving as the County's PBM, should be dismissed because the County

---

[1] Evernorth Health, Inc. (formerly Express Scripts Holding Company), Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Pharmacy Service, Inc. (sued as ESI Mail Pharmacy Services, Inc.), and Express Scripts Pharmacy, Inc. are referred to collectively as "Express Scripts." The other PBM defendants include CVS Caremark and OptumRx.

cannot allege the required proximate cause for either its RICO or ICFA claim. The RICO claim is also barred by the indirect purchaser rule, and the County's unjust enrichment claim is derivative to those failed claims.

*Third*, to the extent that the County's claims against Express Scripts based on the time in 2017 and earlier when Express Scripts served as the County's PBM are not time-barred, these claims remain fundamentally flawed as a matter of law. The County's contracts with Express Scripts show that Express Scripts never had a duty to disclose the detailed confidential information the County's theory would require, and that Express Scripts made significant, relevant disclosures to the County in any event. The contracts preclude the County's unjust enrichment claim as well.

*Fourth*, the County alleges the PBMs' role in the supposed scheme was to make particular misrepresentations. But the alleged representations are either non-actionable puffery or proven true by the County's contracts with Express Scripts and other allegations in the pleading.

*Fifth*, the County's derivative conspiracy claims fail as a matter of law because the County's other claims fail.

*Finally*, at the very least, the Court should dismiss Evernorth Health, Inc., a parent company that the County fails to plausibly link to the alleged conduct.

As explained in detail below, the Court should dismiss the County's Complaint.

## **BACKGROUND**

Lake County alleges that the Manufacturer Defendants and three major PBMs engaged in an "unfair and deceptive conspiracy" it calls an "Insulin Pricing Scheme." Compl. ¶ 12. The central allegation of the scheme is that the insulin Manufacturer Defendants "artificially inflate their list price and then pay a significant, but undisclosed, portion of the inflated price back to the PBMs." *Id.* ¶ 19. According to the County, the PBM it retained "determined the amounts Plaintiff paid for

the at-issue medications" and the County paid its retained PBM "to manage pharmacy benefits related to the at-issue drugs." *Id.* ¶ 414.

Express Scripts has not been Lake County's PBM since 2017. *See id.* ¶ 413. The County has not purchased anything from Express Scripts since then. But from 2014 to 2017, Express Scripts served as Lake County's PBM until the County selected one of Express Scripts' competitors to provide those services beginning in 2018. *See id.* ¶ 468. The terms of Express Scripts and Lake County's obligations are in written agreements formalized after a request for proposals issued by the County. *See id.* Express Scripts attaches these agreements referenced in the Complaint—redacted to remove irrelevant commercially sensitive information—as exhibits to this motion to dismiss.[2]

The County bases five causes of action on the supposed "Insulin Pricing Scheme": (1) violation of RICO, 18 U.S.C. § 1962(c); (2) violation of RICO, 18 U.S.C. § 1962(d); (3) violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.; (4) civil conspiracy; and (5) unjust enrichment. Compl. ¶¶ 514–634.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

---

[2] The Court can consider these contracts at the pleading stage without converting the motion to one for summary judgment because they are documents "referred to in the [County's] complaint and are central to [its] claim[s]." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). The contracts are attached to the included declaration of Jason R. Scherr. *See* Exs. 1–3.

do not suffice." *Iqbal*, 556 U.S. at 678. Despite its extraordinary length, the County's Complaint fails to state a viable cause of action against Express Scripts.

## I.    The County's Claims Are All Barred by the Statutes of Limitations.

A court may dismiss claims on limitations grounds on a Rule 12(b)(6) motion "when the plaintiff pleads itself out of court" by "admit[ting] all the ingredients of an impenetrable defense." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Such is the case here, where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense" by "plainly reveal[ing] that an action is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

### A.    The County's Claims Have Expired.

The RICO statute of limitations, borrowed from the Clayton Act, is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 152, 156 (1987); 15 U.S.C. § 15b. Illinois Consumer Fraud Act claims are governed by a three-year limitations period that similarly bars actions that were not commenced in that window. 805 ILCS 505/10a(e). The statute of limitations applicable to an unjust enrichment claim is, at most, five years under Illinois law. *See Mann v. Thomas Place, L.P.*, 976 N.E.2d 554, 557 (Ill. App. Ct. 2012); 735 ILCS 5/13-205. Civil conspiracy is "not an independent tort"; therefore, the limitations period is "governed by the statute of limitations for the underlying tort[s]" of the alleged conspiracy. *Mauvais-Jarvis v. Wong*, 987 N.E.2d 864, 894 (Ill. App. Ct. 2013).[3]

---

[3] The County brings its claims on its own behalf to recover its own alleged injuries based on its own purchase of insulin for the County and the beneficiaries of its health plan. *See* Compl. ¶¶ 465–83. The County does not and cannot assert any right belonging to the general public. The County's claims are therefore not immune to a limitations defense. *See People ex rel. Dep't of Labor v. K. Reinke, Jr. & Co./Reinke Insulation*, 746 N.E.2d 12, 16 (Ill. App. Ct. 1983).

These causes of action accrued when the County knew, or should have known, its alleged injuries. *Rotella v. Wood*, 528 U.S. 549, 555 (2000); *Clay v. Kuhl*, 727 N.E.2d 217, 220 (Ill. 2000). For RICO, this means that "the injury arising from the first predicate act to injure the plaintiff . . . starts the limitations period running, rather than the injury from the last predicate act." *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 386–87 (7th Cir. 2010).

Lake County filed its Complaint on April 18, 2023. *See* ECF No. 1. It alleges an injury from the first predicate act—a misrepresentation constituting mail or wire fraud—no later than 2012. Compl. ¶ 439.a (alleging Express Scripts "presented Plaintiff Lake County" with a document made "in furtherance of, and in order to conceal, the Insulin Pricing Scheme"). For RICO at least, the County's claims accrued over ten years ago, well past the four-year limitations period.

The County's own pleading shows that it should have known of any injury from the so-called "Insulin Pricing Scheme" before April 18, 2018, five years before filing the Complaint. As the County itself asserts, the conduct at issue began at least twenty years ago. *See, e.g.*, Compl. ¶ 13 (referring to price increases "[o]ver the course of the last 20 years"); ¶ 34 (alleging that the "relevant period this Complaint" began in 2003). The Complaint discusses government investigations and hearings related to pharmaceutical manufacturer payments that began as early as 2011. Compl. ¶ 147. And the County cites 2016 articles where media outlets claimed that PBMs were "incentivized to inflate drug prices," leading to "[r]apidly escalating profits for PBMs and high drug prices for the consumer." Compl. ¶ 353 n.60; *see also id.* ¶ 434 n.89.

The Complaint also borrows from pleadings filed in earlier lawsuits challenging the same conduct, including a lawsuit filed more than five years ago, on February 2, 2017. *See* Complaint, *In re Insulin Pricing Litig.*, No. 17-cv-699 (D.N.J. Feb. 2, 2017), ECF No. 1. In that case, a putative class of individual insulin purchasers—including some who sued under the Consumer Fraud Act—

challenged insulin pricing and claimed to have discovered, years earlier, the same "scheme" alleged by the County here. *See* Compl. ¶¶ 360–63.[4] All of this information is in the public record and the County "should have known of its injury [based on] the public record." *Borto v. First Am. Title Co.*, 2017 WL 1270353, at *4 (Ill. App. Ct. Mar. 31, 2017) (affirming dismissal of limitations grounds); *see also Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 610 (7th Cir. 1995) ("A reasonable investor is presumed to have information available in the public domain and therefore [plaintiff] is imputed with constructive knowledge of this information" for limitations purposes).

But the County was not just a passive consumer of this knowledge; it took actions from 2013 to 2017 related to these same press reports. The County issued Requests for Proposals in 2013 and 2017 for PBM services. *See* Compl. ¶¶ 468–72. In one or perhaps both of those solicitations, the County alleges that it demanded proposals with "a 'transparent pricing' model," meaning the PBM must propose pricing in which it "will not retain any money associated with prescription drug rebates or any money associated with the margin between guaranteed reimbursement rates and the actual amount paid to the pharmacies," reflecting the County's perception at the time as to facts on which its current claims rely. *Id.* ¶ 175. The existence of this "spread pricing" that the County supposedly wanted to avoid through a "transparent pricing" model is part of the claimed "Insulin Pricing Scheme." *Id.* ¶¶ 393–96. The County's RFP further shows that the County knew of the conduct at issue, and any potential injury from such conduct, more than five years ago.

---

[4] The County opted to not take any actions after Harris County filed its complaint in November 2019. *See* Ex. 4 (*County of Harris, Texas v. Eli Lilly and Co. et al.*, 4:19-cv-04994 (S.D. Tex.), ECF No. 1-1). Considering the County copied nearly word-for-word significant portions of the pleading, the County cannot plausibly claim it should not have known of its injuries when that lawsuit was filed. This nearly identical pleading filed over three years ago should at least require dismissal of the County's ICFA claim subject to a three-year bar.

**B.    No Tolling Doctrine Can Save the County's Claims.**

The County identifies four potential reasons to toll the limitations period: (1) the discovery rule (Compl. ¶¶ 498–503); fraudulent concealment (*id.* ¶¶ 504–06); equitable estoppel (*id.* ¶¶ 507–11); and continuing violations (*id.* ¶¶ 512–13). None apply here.

### 1.    The Discovery Rule Does Not Apply.

The "discovery rule" is an "objective" inquiry regarding not only whether a plaintiff knew of its injury but also whether it "should have known." *Axe v. Norfolk S. Ry. Co.*, 972 N.E.2d 243, 246 (Ill. App. Ct. 2012); *see also Rotella*, 528 U.S. at 555 (same for RICO claims). The discovery rule does not apply here because the County *should* have known of its injury well before 2018.

### 2.    The County Has Not Established Fraudulent Concealment or Equitable Estoppel.

The County separately invokes fraudulent concealment and equitable estoppel as distinct doctrines to toll the limitations period. But as pleaded here, equitable estoppel and fraudulent concealment function equivalently. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990) ("Equitable estoppel in the limitations setting is sometimes called fraudulent concealment."); *Carlson v. Michael Best & Friedrich LLP*, 186 N.E.3d 478, 493 (Ill. App. Ct. 2021) ("The common-law doctrine of equitable estoppel, as applied in the context of the statute of repose, parallels the fraudulent concealment statute."). Neither applies here.

By statute, Illinois permits the tolling of the statute of limitations if the party liable "fraudulently conceals the cause of such action from the knowledge of the person entitled thereto." 735 ILCS 5/13-215. The concealment contemplated "must consist of affirmative acts or representations calculated to lull or induce a claimant into delaying filing of his or her claim, or to prevent a claimant from discovering a claim." *Orlak v. Loyola Univ. Health Sys.*, 885 N.E.2d 999, 1009 (Ill. 2007). That means "[m]ere silence on the part of the defendant is insufficient." *Id.*

Fraudulent concealment must involve "efforts by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is founded, to prevent, by fraud or deception, the plaintiff from suing in time." *Shropshear v. Corp. Counsel of City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001). A plaintiff must plead (and ultimately prove) "that the defendant made misrepresentations or performed acts which were known to be false, with the intent to deceive the plaintiff, and upon which the plaintiff detrimentally relied." *Orlak*, 885 N.E.2d at 1009. For a RICO case, "the plaintiff must both use due diligence to discover that he has been injured and by whom even if the defendant is engaged in fraudulent concealment, and diligently endeavor to sue within the statutory limitations period or as soon thereafter as feasible." *Jay E. Hayden Found.*, 610 F.3d at 388. The plaintiff must plead fraudulent concealment with the particularity required under Rule 9(b). *Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 900 (N.D. Ill. 2009).

The County's conclusory allegations do not come close to meeting the burden needed to toll the limitations period for fraudulent concealment or equitable estoppel. The County does not allege that Express Scripts took actions "above and beyond the wrongdoing upon which the plaintiff's claim is founded" to prevent the filing of the lawsuit. *Shropshear*, 275 F.3d at 595. On the contrary, the County affirmatively invokes the *same allegations* to toll limitations as to support its claims. Compl. ¶ 504 ("Through the acts, omissions, and representations alleged through this Complaint, Defendants fraudulently concealed . . . ."). The County also cannot point to affirmative misrepresentations instead of mere silence[5] upon which it relied to delay filing suit. *Orlak*, 885 N.E.2d at 1009. And as explained in detail above, the County has not alleged facts showing that it "diligently endeavored" to file suit, regardless. *Jay E. Hayden Found.*, 610 F.3d at 388.

---

[5] The County's premise to support equitable estoppel—that Express Scripts was "under a continuous duty to disclose" certain information—fails. Compl. ¶ 507. No such duty existed, as explained *infra* at III.A.1.

### 3.     The Continuing Violations Theory Cannot Apply.

The Supreme Court has expressly rejected any "continuing violations" theory to extend the limitations period for RICO claims because a "last predicate act" approach would "thwart[] the basic objective of repose underlying the very notion of a limitations period." *Rotella*, 528 U.S. at 554. Accordingly, "the injury from the last predicate act" cannot restart the County's limitations clock for its RICO claims. *Jay E. Hayden Found.*, 610 F.3d at 386–87.

While Illinois recognizes the continuing violation doctrine, the doctrine cannot save the County's state law claims here for at least two reasons. *First*, the continuing violation doctrine "does not apply to a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing." *Rodrigue v. Olin Emps. Credit Union*, 406 F.3d 434, 443 (7th Cir. 2005) (applying Illinois law). Thus, "where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003). The County bases its claims on numerous "overt acts"—supposed misrepresentations—on which the County claims to have relied over the years by "by paying for the at-issue diabetes medications at prices that would have been lower but for the Insulin Pricing Scheme." Compl. ¶¶ 433–83. Under the County's allegations, each discrete representation could be independently actionable as a fraud once the County relied on the statement. Thus, the continuing violations doctrine cannot apply here.

*Second*, as the name indicates, the continuing violations doctrine cannot apply when the acts are not *continuing. See Vill. of DePue, Ill. v. Viacom Int'l, Inc.*, 713 F. Supp. 2d 774, 779 (C.D. Ill. 2010) ("In cases where the tortious activity ceased at a certain date, the courts do not apply the continuing tort doctrine."). The last time the County alleges Express Scripts made any representations directly to the County was May 2017—more than five years before the complaint

was filed. *See* Compl. ¶ 439.h. And even the last specific statement from Express Scripts that the County labels as a "misrepresentation" occurred in April 2019, when an Express Scripts representative testified before Congress. Compl. ¶¶ 435–36. Insofar as the continuing violations doctrine applies, and the ICFA action was believed to have accrued in April 2019 (the date of the last alleged misrepresentation instead of its last interaction with Express Scripts in 2017), the three-year limitations period for the ICFA would still have expired by the time the County filed its complaint in April 2023. *See* ECF No. 1. And the ICFA claim would still need to be dismissed.

For these reasons, all of the County's claims are time-barred. But at an absolute minimum, the County's claims based on conduct that occurred prior to April 18, 2018—five years prior to the filing of the complaint—should be dismissed as untimely.

## II.     **The County's Claims Based on Conduct After 2017 Are Fatally Flawed.**

The County's claims based on Express Scripts' conduct after 2017—when Express Scripts no longer served as the County's PBM—suffer from three incurable flaws beyond the limitations issue. First, all of the claims based on such conduct should be dismissed because the County did not plead facts showing that Express Scripts proximately caused the County any injury. Second, the County's RICO claims should be dismissed under the indirect purchaser rule because the County stopped being a direct purchaser of anything from Express Scripts—let alone the at-issue insulin products—after 2017. Third, the County's nebulous claim of unjust enrichment fails because the County's other claims fail.

### A.     **Express Scripts Did Not Proximately Cause Any Injury After 2017.**

The County alleges that the "Insulin Pricing Scheme" has caused it to pay too much for insulin products. *See, e.g.*, Compl. ¶ 482 ("the Insulin Pricing Scheme has directly and proximately caused Plaintiff to substantially overpay for diabetes medications"). Express Scripts has not served as the County's PBM since 2017. *See id.* ¶¶ 137, 413. Express Scripts has therefore not provided

any PBM services to the County for the entire five-year period preceding the filing of the Complaint. Nevertheless, the County alleges that Express Scripts has somehow caused it to pay higher prices for insulin.

This theory of liability is too attenuated to survive a motion to dismiss. Both RICO and the ICFA require the County to allege facts showing that the unlawful conduct proximately caused its injury. *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992) (RICO); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010) (ICFA). In evaluating whether a plaintiff alleged proximate cause, "the central question [the Court] must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). An injury generally causes an injury "directly" when it does not require the causation analysis to go "beyond the first step" of the causation analysis. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10 (2010).

The County cannot allege that Express Scripts "directly" caused any of its claimed financial injuries. To begin, the County alleges that the way Express Scripts "deceived" the County was by making certain representations, including that Express Scripts "construct[s] formularies for the benefit of payors and patients by lowering the price of the at-issue drugs and by promoting the health of diabetics," Compl. ¶ 433, and "disavow[s] that [its] conduct drives prices higher" for insulin products, *id.* ¶ 436. *See also id.* ¶¶ 433–35 (listing additional particular statements); *id.* ¶ 439 (listing particular statements directly made to the County by the PBMs).

These particular misrepresentations—rather than the scheme as a whole—must be the conduct that proximately caused the County's injury. *Anza*, 547 U.S. at 457 (the compensable injury is "the harm caused by *predicate acts* sufficiently related to constitute a pattern" (emphasis added)). To satisfy proximate causation based on the predicate acts of mail or wire fraud, the County must allege that "*someone* relied on the defendant's misrepresentations." *Bridge v.*

11

*Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008). The same is true for claims under the ICFA. *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009).

The County cannot plausibly allege that it—or anyone else in the causal chain—relied on any representations by Express Scripts after the County hired Express Scripts' *competitors*. Indeed, the County affirmatively alleges that its employees "were not following the various Congressional hearings" where the representations occurred or were even "exposed" to the representations particularly directed to the County. Compl. ¶ 438. And even aside from reliance, when the County alleges that one of Express Scripts' competitors is the one that "determine[s] the amounts [the County] paid for the at-issue medications," *id.* ¶ 414, it can't simultaneously maintain that Express Scripts proximately caused it to pay higher prices for those same medications. The County fails to plead proximate cause.

### B. The County's RICO Claims Based on Conduct After 2017 Are Barred by the Indirect Purchaser Rule.

The indirect purchaser rule, first articulated in *Illinois Brick v. Illinois*, 431 U.S. 720 (1977), established that only direct purchasers could sue under the antitrust laws. The "bright line" rule is straightforward: "if manufacturer A sells to retailer B, and retailer B sells to consumer C, then C may not sue A." *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1521 (2019). The indirect purchaser rule applies to RICO claims as well. *See, e.g.*, *BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 753–57 (7th Cir. 2011); *Carter v. Berger*, 777 F.2d 1173, 1174–76 (7th Cir. 1985).

After 2017, the County does not plausibly claim it is a direct purchaser of anything from Express Scripts. The County does not allege it purchased insulin from Express Scripts. Nor does it allege it purchased PBM services from Express Scripts. This dooms the County's RICO claim for conduct after 2017. Indeed, a federal court recently applied the indirect purchaser rule to dismiss a nearly identical RICO claim against OptumRx brought by Harris County in a pleading

12

from which Lake County substantially copied. In *Harris County v. Eli Lilly and Co.*, the Court applied the indirect purchaser rule because Harris County did not allege that "it directly paid OptumRx for its PBM services" or that it "purchased diabetes medications from OptumRx." 2022 WL 479943, at *8 (S.D. Tex. Feb. 16, 2022). The Court dismissed the RICO claim against OptumRx under the indirect purchaser rule even though Harris County alleged that OptumRx performed through an intermediary insurer. *See id.*

Lake County, unlike Harris County, does not even have an indirect relationship with Express Scripts after 2017. After 2017, the County does not, and cannot, allege that it paid Express Scripts for anything. It therefore it is not a direct purchaser for its RICO claim against Express Scripts. Accordingly, a straightforward application of the indirect purchaser rule requires dismissal of the County's RICO claims after 2017.

## C. The County's Unjust Enrichment Claim Is Derivative.

The Court should dismiss the County's claim for unjust enrichment because "[u]nder Illinois law, there is no stand-alone claim for unjust enrichment." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019); *Charles Hester Enters., Inc. v. Ill. Founders Ins. Co.*, 484 N.E.2d 349, 354 (Ill. App. Ct. 1985) ("The term 'unjust enrichment' is not descriptive of conduct that, standing alone, will justify an action for recovery."). Instead of a separate cause of action, unjust enrichment is a "condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct." *All. Acceptance Co. v. Yale Ins. Agency, Inc.*, 648 N.E.2d 971, 977 (Ill. App. Ct. 1995).[6]

---

[6] The validity of any standalone unjust enrichment claim is addressed *infra* at III.B

Here, the County's unjust enrichment claims relate to the County's other claims. Indeed, the County expressly re-alleges and incorporates those allegations supporting those other causes of action. *See* Compl. ¶ 613. When an unjust enrichment claim "rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). The County's derivative unjust enrichment claim is derivative to the County's other claims "and tied to the fate" of its other claims. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 740 (7th Cir. 2019); *see also Das v. Tata Consultancy Servs., Ltd.*, 2023 WL 3627714, at *4 (N.D. Ill. May 24, 2023) (lack of stand-alone unjust enrichment claims means "the failure of [plaintiff's statutory] claim dooms his unjust-enrichment claim"). Because its other claims fail, so too must the County's unjust enrichment claim.

### III.    The County's Contracts with Express Scripts Are Fatal to the County's Claims Based on Conduct Before 2018.

If not time-barred, the County's contracts with Express Scripts negate the County's claims based on conduct before 2018. For the County's claims sounding in fraud, the contracts disprove the central allegations of an "Insulin Pricing Scheme." For the County's unjust enrichment claim, the existence of the contract precludes equitable quasi-contractual relief.

#### A.    The County's Contracts Negate the County's Fraud Allegations.

Lake County's own contracts with Express Scripts refute the County's theory that Express Scripts "ha[s] hidden, obfuscated, and laundered . . . Manufacturer Payments through their affiliated entities in order to retain a large and undisclosed proportion of the Manufacturer Payments to the detriment of payors, including Plaintiff." Compl. ¶ 588.

In 2015, the Lake County Government executed an agreement with an Express Scripts affiliate, Express Scripts Insurance Company ("ESIC"), regarding the County's Medicare Part D sponsored waiver plan. Ex. 1. That same year, the County entered into an agreement with Express

14

Scripts, Inc. ("ESI") regarding its commercial plan. Ex. 2. In 2017, ESI executed another Pharmacy Benefit Agreement with the County. Ex. 3.

In each of these contracts, Express Scripts was entirely transparent with Lake County regarding its services, pricing, and the rebates available to Lake County as a payor. The County's extensively negotiated contracts with Express Scripts expressly contradict the County's allegations of deception and unfair or unjust business practices.

### 1. Express Scripts Lacked a Legal Duty to Disclose.

A central theory of the County's complaint is that Express Scripts failed to sufficiently "disclose" all of its revenue sources and the precise terms of the agreements they enter into with the manufacturers. *See, e.g.*, Compl. ¶ 588.h. Under Illinois law, a "duty to disclose arises only when the parties have 'a special or fiduciary relationship, which would raise a duty to speak.'" *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 401 (7th Cir. 2011) (quoting *Neptuno Treuhand–Und Verwaltungsgesellschaft Mbh v. Arbor*, 692 N.E.2d 812, 817 (Ill. App. Ct. 1998)). As such, "[t]here is no duty to speak absent a fiduciary or other legal relationship between the parties." *Magna Bank of Madison Cnty. v. Jameson*, 604 N.E.2d 541, 544 (Ill. Ct. App. 1992).

No such legal relationship exists here. The Lake County agreements with ESI acknowledge that the parties negotiated in an "arm's-length fashion." Ex. 2 § 5.2; Ex. 3 § 5.2. Lake County also agreed in each contract that it does not intend "for ESI to be a fiduciary (as defined under ERISA or state law)" of the County's self-funded Plan, and that Lake County will not name "ESI or any of ESI's wholly-owned subsidiaries or affiliates as a ''plan fiduciary.'" Ex. 2 § 5.2; Ex. 3 § 5.2; *see also* Ex. 1 §§ 2.2, 9.2.[7] The County's allegations claiming Express Scripts failed to make

---

[7] The more recent agreements recognized that ESI would serve as a limited fiduciary if the County opted to have ESI perform appeals services in connection with denied claims for benefits. Ex. 2 §§ 2.3(c), 5.2; Ex. 3 §§ 2.3(c), 5.2. But this limited exception regarding claims processing is not at issue here.

certain additional disclosures cannot support its claims of fraud because, as a non-fiduciary, Express Scripts lacked a duty to disclose.

In addition, there's a good business reason for such confidentiality. Competition drives Express Scripts' ability to negotiate rebates. If drug manufacturers knew what their competitors were offering in terms of rebates, competition would be stifled as the manufacturers could use that information to offer significantly reduced competition-driven discounts. Such a system would stick plans and their beneficiaries with higher, undiscounted prices.

### 2. Express Scripts Disclosed Rebates and Other Manufacturer Revenue Barring Fraud Claims Based on Such Revenue.

Regardless of its legal obligations, Express Scripts made substantial disclosures to Lake County about manufacturer revenue and whether the revenue would be passed through to the County. Each of Lake County's contracts with Express Scripts carefully defines the relevant types of payments manufacturers may make to Express Scripts, including "Rebates" and "Manufacturer Administrative Fees." For instance, the definition of Rebate from the 2017 agreement is "retrospective formulary rebates that are paid to ESI pursuant to the terms of a formulary rebate contract negotiated independently by ESI and directly attributable to the utilization of certain Covered Drugs by Members" and includes a list of payments that do not qualify as "Rebates." Ex. 3 § 1. One such carveout for "Manufacturer Administrative Fees" is also defined in the agreement. *See id.* at 2. The other agreements include similarly detailed definitions of both terms. Ex. 1 § 1; Ex. 2 § 1.

Over time, the County chose to receive varying pass-throughs of the Rebates—a defined term—which ESI received from manufacturers. For instance, in the 2015 commercial agreement, the County opted to receive *at least* 100% of Rebates by opting to receive "the greater of: (i) 100% Actual Rebates attributable to utilization of Plan Participants, or (ii) Minimum Rebate Guarantees

16

as set forth [in the rebate chart]." Ex. 2 at Ex. A-3(1) (underlining removed). At other times, Lake County opted to receive a guaranteed flat-fee rebate regardless of what Express Scripts received. *See, e.g.*, Ex. 3 at Exs. A-3(1), A-4(1)). In other words, sometimes the County opted for higher rebates and lower costs elsewhere; other years the County made the opposite selection. But it was always the County's choice. And these promises were backed up by providing the County audit rights to ensure that it received the Rebates for which it negotiated. Ex. 1 at Ex. C; Ex. 2 at Ex. B; Ex. 3 at Ex. B.

Nevertheless, the County complains that Express Scripts may have had "revenue streams" that were "outside the definition of 'rebates.'" Compl. ¶ 403. The County admits that Express Scripts disclosed the possibility of other revenue sources from manufacturers, and indeed quoted one such disclosure at length. *See id.* And each contract included an entire "Exhibit D" with such disclosures. Ex. 1 at Ex. D; Ex. 2 at Ex. D; Ex. 3 at Ex. D. The County's assertion that the disclaimers are "hazy" or in "general terms" cannot support a cause of action because the County cannot identify any legal obligation for Express Scripts to provide "the intricacies of the dealings between [Express Scripts] and the Manufacturers" it demands. Compl. ¶ 403.

And more fundamentally, to the extent that the County claims it should have received additional revenue that Express Scripts received from manufacturers, the County's entitlement to any such payments derives solely from its PBM contracts. Any plausible claim about Express Scripts not making payments it promised to make would have to sound in contract rather than fraud. *See, e.g.*, *Greenberger*, 631 F.3d at 399 ("When allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract."); *Lake Cnty. Grading Co. of Libertyville v. Advance Mech. Contractors, Inc.*, 654 N.E.2d 1109, 1116 (Ill. App. Ct. 1995) ("[C]ourts have

17

consistently resisted attempts by litigants to portray otherwise ordinary breach of contract claims as causes of action under the [ICFA].") The County's contracts with Express Scripts fatally undermine its claims relating to the time Express Scripts served as the County's PBMs.

**B.      The Contract Bars a Quasi-Contractual Unjust Enrichment Claim.**

To the extent that the County intended to bring an equitable unjust enrichment claim in quasi-contract, such a claim fails because such a claim "is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and defendant." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013). "Where there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Nesby v. Country Mut. Ins. Co.*, 805 N.E.2d 241, 567 (Ill. App. Ct. 2004).

Express Scripts' contract with the County bars any unjust enrichment claim during the operative period of the contracts—2014 to 2017 (Compl. ¶ 468)—to the extent not already time-barred. The County alleges that Express Scripts caused it to pay too much for insulin. *Id.* ¶ 482 ("[T]he Insulin Pricing Scheme has directly and proximately caused Plaintiff to substantially overpay for diabetes medications."). But Express Scripts' contract governs how much the County would pay for prescription drugs, including insulin. Ex. 1 at Ex. B-1; Ex. 2 at Ex. A-1; Ex. 3 at Ex. A-1. The contract plainly controls, precluding a quasi-contractual unjust enrichment claim. *See, e.g.*, *Cooper v. Durham Sch. Servs.*, 2003 WL 22232833, at *6–7 (N.D. Ill. Sept. 22, 2003) (dismissing unjust enrichment claim where a contract governed the parties' relationship).

**IV.     Lake County Failed to Plead Actionable Misrepresentations to Support Its RICO and ICFA Claims.**

For every period, Lake County's fraud-based claims still fail because the County has not pleaded any actionable misrepresentation. Lake County's RICO and ICFA claims sound in fraud. The sole predicate acts supporting Lake County's RICO claims are mail and wire fraud under 18

18

U.S.C. §§ 1341 and 1343. *See* Compl. ¶ 553. And the County's alleged violations of the ICFA turn on supposed "false and misleading misrepresentations of fact." *Id.* ¶ 589. These claims "alleging fraud" must be pleaded with particularity under Rule 9(b).

"Rule 9(b) requires a plaintiff to provide precision and some measure of substantiation to each fraud allegation." *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019). To do so, "a plaintiff must plead the 'who, what, when, where, and how' of the alleged fraud." *Calavan v. First Love Int'l Ministries*, 590 F. Supp. 3d. 1131, 1139 (N.D. Ill. 2022) (quoting *Menzies*, 943 F.3d at 338). The County's many generalized allegations about representations by "Defendants" or "PBM Defendants" must therefore be disregarded. *See, e.g.*, *Vicom, Inc. v. Harbridge Merch. Services, Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'").

For those few representations about Express Scripts for which Lake County provides the necessary specifics, the County fails to identify a misrepresentation that is *actionable*. As explained above, Express Scripts lacked any duty to disclose, so any claim based on concealment or fraud by omission fails as a matter of law. *See supra* at III.A.1. The other representations remain unactionable because they are either generalized puffery, or simply not false as a matter of law based on the County's own allegations.[8]

---

[8] In conclusory fashion, the County invokes language suggesting it is alleging that Express Scripts engaged in "unfair" acts or practices in violation of 815 ILCS 505/2. *See* Compl. ¶¶ 590–91. The County's unfair allegations "completely overlap[] with the deceptive conduct" of which it complains. *In re Vtech Data Breach Litig.*, 2018 WL 1863953, at *7 (N.D. Ill. Apr. 18, 2018). "Simply adding language of 'unfairness' instead of 'misrepresentation' does not alter the fact that [the County's] allegations are entirely grounded in fraud under the ICFA." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). Thus, a separate analysis of an "unfair" act or practices claim is unnecessary because the allegations overlap entirely with its claims based on deception or fraud.

### A. Most of the Representations the County Identified Are Non-Actionable Puffery.

Most of the supposed affirmative misrepresentations—statements about Express Scripts' general commitments to its clients, general statements supporting "transparency"—constitute non-actionable "puffing" under both RICO and the ICFA. *See, e.g.*, *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 299 (7th Cir. 2003) (affirming dismissal of RICO claim based on mail or wire fraud when representations were "nothing more than sales puffery"); *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 926 (Ill. 2007) ("puffery . . . is not a 'deceptive act' within the purview of the [Consumer Fraud] Act").

#### 1. Express Scripts' General Commitments to Its Clients

"In the commercial context, vague and subjective statements of positive attributes are considered 'puffery upon which no reasonable person could rely' and are thus properly found to be insufficient to support claims of fraud." *Foster v. Schock*, 2017 WL 1178349, at *2 (N.D. Ill. 2017) (quoting *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1008–09 (7th Cir. 2004)).[9] In this way, "general expressions of honesty and integrity" are "not . . . actionable." *Foster*, 2017 WL 1178349, at *2; *see Edgenet, Inc.*, 742 F. Supp. 2d at 1018 ("Statements regarding the ability of a business to meet clients' needs are completely subjective . . . and so cannot be considered in the [RICO] pattern analysis.").

Yet the vast majority of statements that Lake County identifies are exactly these generic positive statements or opinions that cannot support a fraud allegation:

---

[9] *See also, e.g.*, *Corley*, 388 F.3d at 1009 ("A generic promise to provide 'high quality' services cannot therefore be the basis of a mail fraud claim."); *Williams*, 351 F.3d at 299 (promotional mailings from casino representing that "Players win!" and "the winning is big," among other things, are nothing more than sales puffery on which no person of ordinary prudence and comprehension would rely).

- Express Scripts "works with clients, manufacturers, pharmacists and physicians to increase efficiency in the drug distribution chain, to manage costs in the pharmacy benefit chain, and to improve members' health outcomes." Compl. ¶ 433.

- Glen Stettin, Senior Vice President and Chief Innovation Officer at Express Scripts said that "["Express Scripts] helps our clients and diabetes patients prevail over cost and care challenges created by this terrible disease" and that Express Scripts "broaden[s] insulin options for patients and bend[s] down the cost curve of what is currently the costliest class of traditional prescription drugs." *Id.* ¶ 434 (alterations in original).

- Express Scripts' code of conduct states that it is "dedicated to keeping our promises to patients and clients." *Id.* ¶ 435.

- Amy Bricker testified: "I have no idea what the prices [for insulin] are so high, none of it is the fault of rebates." *Id.* ¶ 436 (alteration in original).

- In a February 2017 earnings call, Express Scripts' CEO said: "Drugmakers set prices, and we exist to bring those prices down." *Id.*

- Express Scripts' CEO said in 2017 CBS interview that PBMs "negotiate with drug companies to get the prices down." *Id.*

### 2. Express Scripts' Statements Supporting Transparency

Lake County alleges that Express Scripts' then-CEO said in 2017 that "Express Scripts was 'absolutely transparent' about the Manufacturer Payments they received and that payors 'know exactly how the dollars flow' with respect to these Manufacturer Payments." *Id.* ¶ 446. But that's not what he said. What he actually said is that Express Scripts "*support[s]* absolute transparency with our clients and we support as well with patients," and that *clients* know "how the dollars flow" even if *patients* necessarily do not. Ex. 5 at 3 (emphasis added).[10]

Even aside from the misquoting, general promises of "transparency" are non-actionable statements of opinion. *See, e.g.*, *Lateef v. Pharmavite LLC*, 2013 WL 1499029, at *3 (N.D. Ill. Apr. 10, 2013) ("[T]he company's statements that expound its 'commitment to . . .

---

[10] The Court can consider the complete transcript of the interview because Lake County excerpted the interview in its complaint. *See Russell v. Dart*, 2018 WL 2391115, at *7 n.5 (N.D. Ill. May 25, 2018).

transparency,'. . . [is] better characterized as general goals and platitudes that no reasonable person could infer the absence of gelatin from Nature Made supplements.").[11]

### B.     The Other Specific Representations Are Not False.

Rule 9(b) requires a party to state with particularity each false statement and "why it is false." *Gensler v. Strabala*, 764 F.3d 735, 737 (7th Cir. 2014). Not only did the County fail to show why the remaining misrepresentations are false, but the allegations themselves, as well as the County's referenced agreements with Express Scripts, show they are not false.

#### 1.     Express Scripts' Representations About Lowering the Price of Insulin for Patients

Lake County claims Express Scripts misrepresented that it "negotiate[s] with the Manufacturer Defendants to lower the price of the at-issue diabetes medications for payors, but also for diabetic *patients* as well." Compl. ¶ 435. The only non-generic statement the County can point to comes from Express Scripts' former Senior Vice President Amy Bricker's testimony before Congress. *See id.* During that testimony, Bricker testified that the rebates Express Scripts negotiates from manufacturers generate "savings that are returned to patients *in the form of lower premiums* and reduced out-of-pocket costs." *Id.* (emphasis altered). That's not false.

Lake County's contract shows why. Lake County negotiated to receive, at least, a significant portion of the rebates Express Scripts received. Ex. 1 at Ex. B-3; Ex. 2 at Ex. A-3; Ex. 3 at Exs. A-3, A-4; *see supra* at III.A.2. But the Contract does not place any obligations on the

---

[11] *See also, e.g.*, *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 806 (S.D.N.Y. 2018) ("[A]spirational statements, such as that [a company] 'is committed, in principle and practice, to transparency consistent with good governance' . . . are merely generalizations regarding [the company's] business practices and are thus precisely the type of puffery that this and other circuits have consistently held to be inactionable."); *In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 524 (S.D.N.Y. 2020).); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 804 (N.D. Cal. 2019) ("[S]tatements touting [Defendant's] focus on compliance, building trust with various stakeholders, and transparency are examples of corporate optimism and puffery.")

County for how to spend those rebates. Ex. 1 at Ex. B-3; Ex. 2 at Ex. A-3; Ex. 3 at Exs. A-3, A-4. Lake County, like all of Express Scripts' clients, can decide how to spend rebate dollars. Lake County can choose to pass-through the rebates directly to its members to reduce their out-of-pocket costs at the point of sale. The County does not allege that it did so. The County is also free to retain the rebates for itself to lower premiums or to pursue other goals of the County. But the County alone decides how rebates can impact its beneficiaries' out-of-pocket payment. The County cannot choose to keep the rebates for itself and then hold Express Scripts liable for the County's own decision if that causes its beneficiaries to pay more at the pharmacy counter.

### 2. Representations About Express Scripts' P&T Committee

Finally, the County reaches to certain annual reports filed with the SEC to include Express Scripts' explanation that its "Pharmacy & Therapeutics Committee" ("P&T Committee") only considers clinical factors for formulary placements. *Id.* ¶ 433. P&T Committees are standard in the industry and are required by regulations for Medicare Part D. *See* 42 C.F.R. § 423.120(b).

But the P&T Committee is not Express Scripts as a whole. Lake County tries to make hay out of conflating the P&T Committee—which focuses solely on clinical necessity in making formulary recommendations—and Express Scripts as a PBM, which absolutely considers the net cost to its clients for certain clinically interchangeable drugs, like insulin. Lake County knows this because its contract with Express Scripts expressly recognized that the formulary Lake County selected could be modified from time to time. Ex. 1 § 1; Ex. 2 § 1; Ex. 3 § 1.[12]

---

[12] While not a misrepresentation per se, the County also alleges that the "Insulin Pricing Scheme Increases PBM Mail-Order Profits." Compl. at p. 87 (italics removed). Express Scripts disclosed that its subsidiary pharmacies, including its mail-order pharmacies, generate revenues. *See, e.g.*, Ex. 3 at); Ex. D at 45 ("[O]ur pharmacies realize an overall positive margin between the net acquisition cost and the amounts paid for the dispensed drugs."). Express Scripts making money from the mail-order segment of its business is neither tortious nor wrongful. There is nothing deceptive, fraudulent, or unfair about Express Scripts operating as a for-profit business.

## V.     The County's Derivative Conspiracy Claims Fail.

The County's claim under 18 U.S.C. § 1962(d), conspiring to violate 18 U.S.C. § 1962(c) (Count Two) and civil conspiracy (Count Four), are both derivative of the County's other claims. To plead a viable RICO conspiracy claim under section 1962(d), "a plaintiff must allege that a defendant agreed to the objective of a violation of RICO." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998) (cleaned up). Claims under Section 1962(d) are thus "derivative" because they require allegations about conspiring to violate another provision of Section 1962. *See Drobny v. JP Morgan Chase Bank, NA*, 929 F. Supp. 2d 839, 848 (N.D. Ill. 2013). Similarly, under Illinois law, "civil conspiracy does not constitute a standalone claim." *LLC v. Waste Connections, Inc.*, 2023 WL 2266147, at *3 (N.D. Ill. Feb. 28, 2023).

Because the County's standalone RICO claim under Section 1962(c) fails, so too must its claim under Section 1962(d). Likewise, because the County fails to sufficiently plead any underlying tort to support its civil conspiracy claim, that cause of action should be dismissed too.

## VI.    Defendant Evernorth Is Not Liable for the Actions of Its Subsidiaries.

In contravention of the "general principle of corporate law 'deeply ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries," Lake County attempts to hold Evernorth liable for the alleged acts of the other PBM defendants. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). In Illinois, a party seeking to pierce the corporate veil bears "the substantial burden of showing that the corporation is merely a sham which exists for the benefit of another dominating entity, its alter ego." *Dimmitt & Owens Fin., Inc. v. Superior Sports Prods., Inc.*, 196 F. Supp. 2d 731, 738 (N.D. Ill. 2002).

Lake County's conclusory allegations that Evernorth "is directly involved in shaping the company policies that inform its PBM services and formulary construction . . . related to the Insulin Pricing Scheme," Compl. ¶ 125, all boil down to accusations of influence over its subsidiaries, the

other Express Scripts defendants. *See, e.g.*, *id.* ¶ 128 ("Evernorth is the immediate or indirect parent of pharmacy and PBM subsidiaries that operate throughout Illinois, which engaged in the activities that gave rise to this Complaint."). As other courts reviewing similar allegations have held, generalized allegations of parental influence like those in Lake County's complaint are insufficient to show the degree of control required to impose liability for a subsidiary's actions. *See, e.g.*, *Miss. ex rel. Fitch v. Eli Lilly & Co.*, No. 21-cv-674, slip op. at 14–16 (S.D. Miss. Aug. 15, 2022) (concluding plaintiff's "conclusory allegations that the parent companies exercise substantial control" over their subsidiaries was insufficient to pierce the corporate veil and hold parents liable for "Insulin Pricing Scheme").

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the County's Complaint against Express Scripts with prejudice.[13]

Dated: July 14, 2023

Respectfully submitted,

/s/ *Jason R. Scherr*
Jason R. Scherr (admitted *pro hac vice*)
Patrick A. Harvey, Bar Roll No. 995570
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Ave., NW
Washington, D.C. 20004-2541
Phone: (202) 739-3000
Fax: (202) 739-3001
Email: jr.scherr@morganlewis.com
　　　 patrick.harvey@morganlewis.com


Elizabeth B. Herrington, Bar Roll No. 6244547
**MORGAN, LEWIS & BOCKIUS LLP**
110 North Wacker Dr., Suite 2800
Chicago, IL 60606-1511
Phone: (312) 324-1445

---

[13] Express Scripts also adopts the additional arguments for dismissal included in the memoranda of law submitted by its co-Defendants to the extent not included herein.

Fax: (312) 324-1001
Email: beth.herrington@morganlewis.com

*Attorneys for Defendants Evernorth Health, Inc. (formerly Express Scripts Holding Company), Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Pharmacy Service (sued as ESI Mail Pharmacy Services, Inc.), and Express Scripts Pharmacy, Inc.*